No. 74.—OLDER NEAL, plaintiff in error, *vs.* GREEN B. HAYGOOD, administrator of JAMES HENDON, deceased, defendant in error.

At common law, the action of debt against a sheriff, for an escape out of final process, does not survive against his representative.
Under the statutes of Georgia such an action does survive.

This case was tried before Judge Dougherty, in the Superior Court of the county of Clark, at the August Term, 1846.

For the facts of the case, and the error assigned, the reader is referred to the opinion delivered by the Supreme Court.

H. & T. R. R. Cobb, for the plaintiff in error.

Junius Hillyer and Green B. Haygood, for the defendant in error.

Insisted that the action of debt against the sheriff, for an escape, does not survive against the representative.

1st. Because it is a personal action which dies with the person.—1 *Chit. Plead.* 102.

2d. Because the action, though in form *ex contractu,* is in fact founded upon a *tort,* viz: the negligence of the sheriff, or jailor, in permitting the escape.—*Dyer;* 271, 322; 1 *Saund.* 216, note 1'; 2 *Wms. on Ex'ors,* 1230. When the act complained of is beneficial to the sheriff, or his estate, his assets ought to be answerable, and his executor therefor be charged.—*Hambly* vs. *Trott, Cowp.* 214, 371 ; *Toller on Ex'ors,* 460-462 ; *Franklin* vs. *Lowe, Adm'or,* 1 *Johns. Rep.* 396-402 ; *Martin* vs. *Bradly,* 1 *Caines' Rep.* 124.

3d. Our statute, which requires the sheriff to give bond, only designs to secure to the parties in interest those rights to which they were entitled at law.

*By the Court.*—Nisbet, Judge.

This was an action of debt, brought in the lifetime of James Hendon, late sheriff of Clarke county, by a plaintiff in execution, for an escape out of final process. The defendant in execution had been committed on a *ca. sa.* Pending the action the sheriff died, and *scire facias* having issued to make his representative a party ; upon return thereof, Green B. Haygood, Esq., the administrator, objected, upon the ground that the action for an escape, being a personal action, abated upon the death of the sheriff. The judge presiding sustained the objection, and it is upon that decision that the plaintiff in error brings his writ.

In England, all actions at common law, in favor of a sole plaintiff against a sole defendant abated. The survivorship of actions is given by statute. The general rule, as to personal actions, is expressed in the maxim, " *actio personalis, moritur cum persona,*" actions on contracts, expressed or implied, survive. This legal maxim is considered as applying to actions in form, *ex delicto,* exclusively. Notwithstanding, all actions founded in *tort* do not abate. This doctrine, in England, has undergone considerable modification from its early universality ; and it is not a very easy matter to determine, with precision, what actions do abate, according to the common law. By our statute, if the *cause* of action will survive in the same or any other form, the action does not abate. So we are relieved from the consideration of the subject of abatement, so far as regards the *form* of actions.

The doctrine of abatement was discussed by Lord Mansfield, in the case of *Hambly* vs. *Trott,* in *Cowp.* 373 ; and the opinions expressed in that case have ruled the decisions of the British and American courts from that day to this—not universally, but very generally. One finds it difficult, notwithstanding the precision and perspicuity of Lord Mansfield's opinions, to deduce from the case in Cowper any rule which will satisfactorily embrace all causes of action in *tort* which will abate, and exclude all which will survive. He says : " Where the cause of action is a *tort,* or arises, *ex delicto,* supposed to be by force and against the king's peace, then the action dies ; as battery, false imprisonment, trespass, words, &c., *escape against the sheriff,* and many others of the same kind." The

test first applied to determine whether actions abated or not, was the general issue, and it was held that in all cases where the general issue was *not guilty*, the action abated. This rule embraced too much, and was confessedly without reason. Its absurdity was manifest in the very case in which it was announced; that was an action of *trover* against the representative for a conversion in the life of the intestate, and was dismissed because the plea of the general issue was *not guilty*. The rule, however, was enlarged in the case of *Hambly* vs. *Trott*, Lord Mansfield declaring: that in cases of *tort*, where the tortfeasor has injured another, without thereby benefiting his own estate, the action did not survive. It is upon this last distinction that, we are informed, the case at bar was determined not to survive. The weight of authority, we admit, sustains the rule as above stated; but, with great respect for the courts and the men who have established it, we are constrained to say that it is not well-founded in principle. The two rules before herein adverted to, are, in our view, purely technical and arbitrary. We see no reason, in fact, why all causes of action, *ex delicto*, as well as *ex contractu*, should not survive. The law gives to a *citizen*, for an injury to his character, remuneration in money, because there is no way but this to remunerate him; and, should the slanderer die, the right and the remedy ceases. Upon principle, we see no reason why one who has been injured by the violence, or slander, or malfeasance, or omissions of another, should be deprived of redress, because the wrong-doer happens to die before he can get it. The rights of men in a society, eminently civilized and enlightened as ours is, should not depend upon the form of a plea. And why should the right to redress depend upon the question whether the estate of the tortfeasor has been benefited? It ought to depend, as we believe, alone on the fact of *injury* to the complaining party. The common-law scarcely, in this particular, deserves the encomium of its great commentator: "the perfection of human reason." And such is the judgment of the British Parliament, for by *Statute* 3 *and* 4, *Will.* 4, trespass and case will lie against personal representatives for any wrong committed by any person, deceased, in his lifetime, to another, in respect of his property, personal or real, so as such injury shall have been committed within six calendar months before such person's death. So much for the general subject of abatement, and in relation to which see 1 *Cowp.* 373; *Broom's Legal Maxims*, 400, 407; 4 *B. and Ad.* 829; 10 *B. and C.* 299, 308; 2 *Durnf. and East*, 126; *Toller Ex'ors*, 460; 1 *Johns. Rep.* 396, 402; 1 *Caines' Rep.* 124.

In enumerating causes of action that do not survive, as we have already seen, Lord Mansfield mentions *escape against a sheriff*. It is because *escape* is found in that enumeration, that the action for escape has been determined in the majority of cases to abate; the later cases all having reference to this early authority. At common law, debt did not lie for an escape, and the remedy was by action on the case, in which the recovery was according to the quantum of injury sustained. By statute, in England, debt lies for an escape out of final process. An important distinction obtains between an escape out of *mesne* and final process. For the former case is the appropriate remedy, and the sheriff is liable for the *delictum*, according to the injury proveable; for the latter *debt is* the appropriate remedy, and the sheriff, taking the place of the defendant, is liable

for the whole debt with costs.—2 *Inst.* 382; 2 *T. R.* 132; 2 *Strange,* 827; 2 *H. Blk.* 108; 1 *Saund. Plead, and Evid.* 484; 1 *Wheat. Selw.* 614 *a* 616.

We must believe that Lord Mansfield, by escape against the sheriff, meant escape upon *mesne* process. The reasons of this belief are as follows: In *Hambly* vs. *Trott*, he says, that all causes of action, originating in contract, express or implied, survive. If the sheriff, upon escape out of final process, is liable for the debt, (and of this there is no manner of doubt,) I cannot perceive how it is, that this obligation to pay is not a contract implied *virtute officii.*

One of the duties of the sheriff is, safely to keep the body of the defendant committed under a *ca. sa.* The process commits him until the debt is paid, or he is discharged under our insolvent laws : the commitment is the plaintiff's satisfaction. At common law, a discharge after arrest extinguishes the debt. The sheriff undertakes, as the agent of the law, to retain for him the plaintiff's satisfaction, against all things but the act of God and the king's enemies. The inference of law, therefore, in case of escape is, that the sheriff, instead of the body of the prisoner, has got the money due on the judgment. Under these views it is that he becomes himself the debtor. Do not the duties of his office, his voluntary acceptance of it, the liquidation of the plaintiff's debt, and the terms and conditions of the commitment, create a contract by implication of law ; and, if so, then Lord Mansfield, by his own judgment, in *Hambly* vs. *Trott*, is demonstrated to have meant an escape on *mesne* process. The fact, that an escape from execution is the contingency upon which a sheriff becomes liable, upon the contract implied by the tenure of his office, is not left to be educed from reason—it is established upon authority.

Blackstone holds the following language : " The last class of contracts implied by reason and construction of law, arises upon this supposition, that every person who undertakes an office, employment, trust, or duty, contracts with those who employ or entrust him, to perform it with integrity, diligence and skill. And if, by his want of either of those qualities, any injury accrues to individuals, they have therefor their remedy in damages, by a special action on the case.

" If a sheriff, or jailor, suffers a prisoner, who is taken on *mesne* process, to escape, he is liable to an action on the case. But if, after judgment, a jailor or sheriff permits a debtor to escape, who is charged in execution for a certain sum, the debt immediately becomes his own, and he is compellable by action of debt, being for a sum liquidated and ascertained, to satisfy the creditor his whole demand."—3 *Black.* 164 ; *Moore,* 431 ; *Cro. Eliz.* 625 ; *Inst.* 382.

Whilst, therefore, we are constrained to admit, with the able judge who presided in this case, that at common law, according to the weight of authority, the action of debt for escape out of final process, does not survive against the representative of the sheriff, yet we dissent from the wisdom and reasonableness of the rule.

By the judiciary act of 1799, it is declared that no suit, in any of said courts, shall abate by the death of either party, when such cause of action would, in any case, survive to the executor or administrator, whether such cause of action would survive in the same or any other form ; but the

same shall proceed, as if such testator, or intestate, had not died."—
*Prince*, 422.

Under this statute, it is conceded, by the learned counsel for the defendant, that if an action can be sustained against the representative of the sheriff on his bond, for the escape, his representative may be made a party to this suit by *scire facias.*

Under the statutes of Georgia, are the representatives of a deceased sheriff liable for an escape out of final process ? Does the cause of action survive ? We think it does. Sheriffs in England, because of the dignity of the office, and because, too, its functions are, to some extent, judicial, are not required to give bond. This question, for this reason, could not arise there, precisely in the form in which it has arisen here. By statute, in this State, the sheriff is required to give bond and security for the faithful performance of the duties of his office. The law requires that he make, with the public, a covenant, guarantied by competent security, that he will save all persons harmless, by reason of his default.—
*Prince,* 430.

In his bond he acknowledges himself bound to the governor of the State in a stipulated sum, from the payment of which he is acquitted by the faithful execution of his trust. And this bond may be sued by any one aggrieved by its breach. One of the duties of his office is safely to keep the body of a debtor committed under execution ; and, if such debtor escape, one of the obligations which the law imposes upon him is to pay the debt. Now, is not a failure to keep the body of the debtor a breach of the bond ?—a violation of his covenant? And is not his representative liable, as he would be upon any other covenant broken in his life ? Must not his estate, as well as himself, abide his contract ? We find it hard to entertain a doubt about it. All contracts and covenants express, survive. We know of no exception. The authorities are clear and uniform to this point.—1 *M. and W.* 423 ; 10 *A. and E.* 446 ; *Bacon's Abr. Ex'ors and Adm'ors* (p. 11), *Com. Dig. Administration,* (p. 14) ; 2 *Lomax,* 258, 264-5 ; *Dyer,* 14 ; 2 *Mad.* 269 ; 1 *Rich.* 310 ; 2 *Brockenbrough,* 316.

The argument relied upon at this bar for the defendant is, that the bond creates no new rights or obligations, and is only designed to secure persons aggrieved from ultimate loss, in the event of the sheriff's insolvency. It is true that the bond creates no new duties, but if it be conceded that, at common law, a party injured cannot pursue his redress against the representatives of the sheriff, new rights are clearly given to such party. The securities are liable for an escape, and their liability is only commensurate with that of their principal. If they are charged, can it be that they are not entitled to indemnity from the estate of their principal. The bond displaces all implication. The law of contracts applies to it. Be the common law, as to escapes, what it may, we are of opinion that the case before us is a cause of action, originating in contract, and survives.

The judgment of the court below must, therefore, be reversed.