## SWANN *et al.* vs. GARRETT *et al.*, executors.

[This case was argued at the last term, but was re-argued at the present term, by order of the court.]

1. Where a testator directs that his executors shall sell certain property and divide the proceeds among certain named legatees, it is optional with such legatees to elect to take either the property itself or the money arising from the sale thereof. The legacy is as much of the property as of the proceeds of the sale; and to allow

the legatees to take the property, instead of the money arising from the sale, is no violation of the testamentary scheme.

2. A court of equity has jurisdiction and power to elect for an infant legatee where, upon due inquiry, it shall appear to be for the interest and advantage of the infant, that he shall take the property itself or its proceeds. The interests of all the legatees are to be consulted as well as that of the infant

JACKSON, C. J., dissenting.

December 4, 1883.

Wills. Legacies. Election. Equity. Infants. Before Judge HAMMOND. Fulton Superior Court. October Term, 1882.

Emma J. Swann, William W. Austell, individually and as executor of Alfred Austell, deceased, and Leila C. Austell filed their bill against James Swann and W. J. Garrett, as executors of Alfred Austell, and against Alfred Austell, Jr., and Swann, as his guardian, alleging, in brief, as follows: In 1878, Alfred Austell made his last will. He died in December, 1881, owing no debts. William W. Austell and his brother-in-law, James Swann, and W. J. Garrett were appointed executors, qualified, and are executing the will. After various bequests, the will, by its ninth item, directed the residue of testator's estate to be sold or converted into money by his executors, at such times and places and under such circumstances as they might deem best, and the proceeds be equally divided between his children, share and share alike. The residue consists of eight bonds of the Atlanta City Brewing Company, dated December 1, 1881, for $1,000.00 each, due December 1, 1885, bearing eight per cent interest per annum, secured by trust deed on the property; fifteen bonds of North Carolina, bearing four per cent interest; eighteen bonds of South Carolina, bearing six per cent interest; four hundred and six shares of stock in the Atlanta National Bank; twelve hundred and fifty shares of the stock of the Spartanburg, Union and Columbia Railroad Company; and about one-twenty-third of the Asheville and Spartanburg Railroad

Company and its property. These securities are all desirable and valuable as permanent and safe investments, and if sold, the proceeds could not again be so well or profitably and safely invested; as permanent investments, they have become more desirable since the date of the will; they are worth more and are more desirable at their market value than any other securities that could be bought with the money, and it is to the interest of all the legatees under that item of the will that said property and securities should not be sold, but should be divided in kind. The prayer was that parties defendant be properly made, and a guardian *ad litem* be appointed for the minor, if his interest should conflict with that of his regular guardian; that the property be not sold, but be divided in kind by commissioners to be appointed for that purpose; that the executors be enjoined from selling the property and securities, and for general relief.

On general demurrer, the bill was dismissed, and complainants excepted.

HOPKINS & GLENN, for plaintiffs in error.

N. J. HAMMOND, for defendants.

BLANDFORD, Justice.

Alfred Austell died, leaving his last will and testament. By the ninth item or clause of said will, said testator directed that all the residue of his estate not before disposed of should be sold and converted into money by his executors, at such time and place and under such circumstances as they might deem best, and the proceeds be equally divided between his children, share and share alike. Testator left four children at his death, surviving him, three of whom, the plaintiffs in error, are of full age, and one, Alfred Austell, Jr., who is a minor, and who is defendant in error.

The plaintiffs in error filed their bill against Alfred

Austell, Jr., and Wm. J. Garrett, one of the executors to said will, in which they allege that the property constituting the residue of testator's estate, which is directed to be sold by his executors, consists of certain shares of bank stock, bonds, and interest in a certain railroad in South Carolina, etc.; that this property is very valuable, and has increased in value since the making of testator's will, and is desirable as a permanent investment; that there are no debts to be paid, and no one is interested in this property except the legatees under the will; that it will be greatly for the interest of all parties interested, not to sell this property, but that the same be divided in kind between them, and they pray that the same be divided in kind, and for general relief. To this bill the defendant, Garrett, demurred, upon the ground that there was no .equity in the bill. The court sustained the demurrer, and dismissed the same. To this decree the complainants excepted, and this writ of error is brought to review and reverse the same.

1. Where a testator directs that his executors shall sell certain property, and divide the proceeds between certain named legatees, it is optional with the legatees to elect to take either the property itself or the money arising from the sale of the same. Such a bequest is as much of the property itself as of the money arising from the sale of the same; to allow the legatee to take property instead of the money arising from the sale, is no violation of the testamentary scheme of the testator; the purpose of testator is, that the legatees, who are the objects of his bounty, shall have his property, and if this can better be accomplished by the legatees taking the property itself, rather than to have a sale of the same and taking money arising from such sale, what objection can be raised to this course? The more valuable the bequest is, would seem not to conflict with testator's desires, but would be in conformity thereto; so it cannot with any reason be said that this course would be violating or making a new will for the tes-

tator. The question is as to investment, not of the construction of an investment, which would be of the most benefit to the legatee, cannot possibly be considered as contrary to the testator's wishes. So, where there are no interests except that of the legatees to be affected, they may take the property, instead of having the same sold, because the property vests absolutely in the legatees; it belongs to them upon the death of the testator, and so this court held in *Adams vs. Bass, ex'r.*, 18 *Ga.*, 130, and that case went much further than we are required to go in this case. In that case, the testator directed his estate to be sold by his executors, the proceeds to be invested in state bank stock, and the dividends thereon to be equally divided, as they should be declared, between his nephews and nieces, without limitation of time, and without making further disposition of said fund. It was held that this was a bequest of the principal as well as the interest, and that the whole vested absolutely and at once in the legatees, and that it was optional with the legatees to take either the property itself or the proceeds. How much stronger is the present case before us than the one cited above! Here, the direction is to sell the property, and divide the proceeds among the legatees; there the executors were required not only to sell the property, but to make a particular investment, and to divide the proceeds of such investment between the legatees; yet the court held that the property itself belonged to the legatees, and vested in them, and they might elect to take the property, or its proceeds. And in this case we now hold that the property mentioned and devised under the ninth item vests absolutely in the legatees, and it is optional with them to take the property or its proceeds. 1 P. Williams, 130, 389, 471; 1 Roper on Legacies, 547; 2 Jarm. on Wills, 188 note; 2 Story's Equity, 1213, 1215; 16 Ala., 489.

2. A court of equity in this state has jurisdiction and power to elect for an infant legatee, situated as the minor is in this case, where, after due inquiry, it shall appear to be for the interest and advantage of the infant, that he take the

property itself or its proceeds. The interests of all the legatees are to be consulted, as well as that of the infant. 2 Jarm. on Wills, 188 note ; 19 Beavan, 494 ; 2 Randolph, 404 ; 16 Ala., 409 ; 3 Leigh, 428 ; Hill on Trustees, 396 ; 3 Wheaton, 578 ; Adams on Equity, 296 ; Pomeroy on Equity, 1213.

These authorities amply sustain the proposition announced above, but we are not left without guidance from our own statute. If this property should be sold and converted into money, then the money would have to be invested by the guardian for the infant, and he could only invest in stocks, bonds, or other securities issued by this state ; any other investment must be made under an order of the superior court. Code, §2330. So it is clear that, if this property were sold, the superior court would have power to direct an investment of the money in the identical property sold. We cannot see why, if the court has the power to direct a re-investment in these identical securities, it has not the power to say, let the present investment stand. The only thing is, will it be for the benefit and advantage of the infant ? This should be made satisfactorily to appear by the proof submitted at the hearing. This power of the court is to be exercised for the infant's benefit. There is equity in this bill, and the court erred in dismissing the same.

Judgment reversed.

HALL, Justice, concurred, but furnished no written opinion.

JACKSON, Chief Justice, dissenting.

The will of the testator is the law of the distribution of his property. What he wishes to be done with it, must be done, unless it contravenes the policy or law of the commonwealth. No court, either of law or equity, can rightfully annul or alter this law of the testator's will or wish touching his property, any more than such court can right

fully annul or alter any other law of the state enacted by the general assembly; because the right to dispose of the testator's property to suit himself rests on a statutory enactment of that general assembly, just as binding as any other enactment it makes. If, therefore, the bill of these complainants seeks to dispose of this property therein described differently from the manner in which General Austell declared in his will that it should be disposed of, it is in the teeth of the law, and as equity follows the law, it is without equity; and inasmuch as the demurrer is general, it is demurrable, and should have been dismissed, and the judgment of the chancellor should be affirmed. Code, §§2399, 2456, 3083.

Indeed, equity, under the statutes of this state, is powerless to interfere with the probate or execution of a will, even in cases of fraud; but the courts of ordinary and the superior court, on its law side, by appeal from the court of ordinary, have exclusive jurisdiction thereof. Code, §3172.

But in this case there is no question of fraud, and the Code last above cited is alluded to simply to show, not only that equity follows the law, as prescribed in section 3083, but for fear that, upon some vague general idea of fraud in the bestowal of favors after death, such as possibly equity's longer arms might reach, a testator's will might be set aside, the door is shut and locked to equity, and strict law alone is permitted to deal with the execution of a will.

The sole question made here is, has a court of equity the right to interfere with the execution of this will by the executors—with the management of the property therein set out in the bill, and disposed of in the only clause of the will which is exhibited, as prescribed in that clause; or in other words, is it equitable that the court of equity shall intervene?

What is the bill?

It is filed by the adult children and legatees of General

Austell against their minor brother and co-legatee and the executor of the will, to compel the infant to elect to take property in kind, which the testator wished and willed that he should not take in kind, but should be converted into money, and otherwise invested; and it asks the court, in view of the incapacity of the infant to elect by his guardian or other legal mode, itself to act as standing *in loco parentis*, and elect for the infant to take in kind his share of the property bequeathed in common to him and the complainants, when the testator—the real parent—had declared his wishes, or his will, to use the technical name for the paper, that the infant should not take it in kind, but that it should be turned over to his guardian in money, and the money be invested as the law directs a guardian to invest it; and inasmuch as the executor is proceeding to sell the property, as directed to do by the will, for the purpose of getting the money in its place, as required by the will, in order to be otherwise invested by the guardian of the child, these complainants pray that the harsh writ of injunction issue from the court of equity to stop this sale by the executor, though required to sell by the will.*

The error alleged is the denial by the chancellor of this writ in this case; and this court is seriously asked to rule that the chancellor abused his discretion as an equitable judge, when he denied the harsh writ!

Surely, some overpowering necessity must exist to require the interposition of the chancellor. Surely, this bill must somewhere, in statement, charge or exhibit, show this necessity. It is the regular administration of an estate by the legal custodian thereof, who is engaged in doing the very thing which his law of administration and distribution—the will of the testator—required him to do; and our statute warns the chancellors of this state to be par-

---

*Compare 68 *Ga.*, 735; 47 *Id.*, 195; McCook et al. vs. Pond, adm'r; Elam ex'x, vs. Elam et al.; Bailey et al., ex'rs vs. Ross, adm'r, et al.; Rakestraw, ex'x, vs. Rakestraw et al. (All at Sept. Term, 1883).

ticular and cautious in such interference with estates. Code, §3144.

Some necessity, therefore, some change of values of a remarkable character, some total transformation of the property in question, and of the surroundings of the testator at the time of the execution of his will, must have occurred since that date to authorize this court to control the chancellor in withholding this writ, when it is remembered that our statute again declares that "the granting and continuing of injunctions must always rest in the sound discretion of the judge, according to the circumstances of each case." Code, §3220.

I look in vain to find in this record any necessity for this interference with the executor. I can find no hint of any change in the situation of the property, or of any material change of value. There are vague allegations of the desirableness of these investments, and unmistakable averments that complainants prefer a distribution in kind, and that they consider it their interest and that of the infant to take the property in kind, and that in their judgment no better investments—perhaps in zeal they say none as good —can be made.

But these general allegations amount to nothing, except to substitute the judgment of the complainants for that of the testator, and to substitute that judgment, not only for themselves in respect to what he gave them a share apiece of, but to substitute it for the infant, who also has a share. In so far as the complainants themselves are concerned, as they are all adults, and as the proceeds after sale of the estate in common are to be divided between them, and as they prefer, against the judgment of the testator, to receive the bequest in kind, there are authorities to the effect that, at their election, they may take in kind and stop the sale; because the testator intended them to have the proceeds, and well knew that, being *sui juris*, they could buy in the property or re-invest in it, if they wished, and thus the will, the intention, the substance of

the gift of the testator, is not contravened, but practically carried out.   This principle is recognized in 18 *Ga.*, 130— a case in which it seems that even another investment had been directed in the testator's will.    But in that case no in. fant's bequest was in common with those of adults, and the real question made here is not there decided; nor am I aware of any case where it has been decided; certainly, none by this court can be found in the most remote degree resembling this.   The principle here sought to be enforced is nakedly to change the character of the property which the testator willed that an infant legatee should receive, or, rather, to compel the infant, by the mere election or decree of a court of equity, to take that property in kind which the testator said that the infant should not take in kind.   In other words, the court of equity changes for the infant the will of the testator, and makes its will the law instead of the testator's will.   I use the language, " election or decree," because the words are substantially the same.    In effect, the court "elects" when it "decrees;" and what it elects, it decrees.   Its decree upsets the will, because it elects so to decree, and therefore so to upset.   And if this dangerous onslaught on the sanctity of the right of a dying father to say by will what kind of property he adjudges his helpless and infant son shall not hold in his minority, be not repulsed, at least checked, by the barrier of a dissenting opinion, a court hereafter is the law of a dead man's estate, and judicial discretion is the measure of testamentary right and parental providence.

If, therefore, as tenant in common with his co-legatees, this infant be hurt by the removal from the *corpus* of the joint estate three-fourths of it before the sale, so that his single share thus left alone will bring less money in proportion, I hold this bill inequitable, because equity will not help adult legatees at the expense and to the hurt of an infant.   There is no allegation in the bill that the shares of the complainants can be turned over to them without damage to the infant, if his be sold separately.   So far as the

statements of the bill go, they allege that, if all be divided in kind, all will be benefited; but it is not stated that part can be divided in kind and the residue sell for as much. Therefore, if equity cannot alter the will as to the infant's taking his part in kind, against his deceased father's election for him, it will not let the adults have their shares in kind, because the infant will be hurt. Hence, there being no allegation that he would not be hurt, the bill is inequitable, and the injunction was properly refused.

Can equity alter, nay, annul, the will of the testator in respect to this infant's share, the status of the property bequeathed being unchanged since the will, and the necessities of the infant not absolutely demanding the interference of the court? I concede that, where material changes have occurred since the execution of the will, a court of equity may interfere; because no man can know what the will of the testator would be, if in life, or would have been had the changed situation existed when he made his will; and therefore the key of the will, the intention of the testator, is lost, and it cannot be found and ascertained. The best substitute for it is a court of equity; but when it unlocks, it enters no door forbidden by the testator; it does nothing contrary to his intention; but it ascertains, as far as consummate reason and close scrutiny can, what testator would do, what he would will in the changed condition of things; what he would then intend, and it does that. It carries out the will so far as it can do in the changes wrought by providence or time.

So, too, where the necessities of the infant, actual food and raiment, or other overpowering emergency demand its intervention, equity will sell to feed and clothe, because it knows that the parent or testator would do the same thing under the same emergency. But beyond these cases I deny the power, the legal power, not the mere brute force or mechanical strength, of any court, law or equity, to act, for the effect is to annul or alter a will, because in all other cases except change of status or necessity, the

testator has passed himself on the case with all the facts before him, and has legislated upon it, and made the law of it and adjudicated it. It has become not only law on the statute book, but law applied by the court to the facts, a court clothed with the jurisdiction of the case; it is therefore *res adjudicata,* and from this judgment there is no appeal known to law or equity.

But suppose equity had such power, would it exercise it in the case made by this bill? Should it? Ought it to do so? What is the case made by the bill? What property is to be forced on this child? Bonds of the states of North and South Carolina, stock in an unfinished railroad in South Carolina and an undivided share in the *corpus* of that unfinished railroad, stock in the First National Bank in Atlanta, and bonds in the Atlanta Brewing Company; these are the items of property which the testator directed to be sold, converted into money, and the money divided among these three adult complainants and this infant defendant. These items the executor was proceeding to sell when arrested by the application for this injunction. If equity has the power, ought it to grant this injunction?

This single clause in the will is the only part of that instrument exhibited, to the bill; the others are not before us. This specifies these items of property, which the testator required the executors to sell and convert and change the investment he had made therein. What were his reasons? He is not compelled by any law to give any. It is enough for him to say, " I will it so." That will makes the direction law. Nothing but the time of sale is left to the discretion of the executor. No point on the present, as the proper time, is made in the bill. The only point the bill makes is that the investment is good, and therefore, complainants want the property above itemized divided in kind and not sold. But the testator has adjudicated that point; and for sound reasons, if reasons must be given, to sustain his will. He has decided that these

five several investments are bad or dangerous, and that he decrees the sale. Who shall reverse that decree? Shall these complainants? They may differ from the testator's judgment, and decide that their investments are good, and they may re-invest in them if sold, and therefore they might, by a consent decree, reverse that of the testator, as equity avoids circuity of actions or steps, and will let them have at once what they could get by buying and re-investing. They might do that, however unwise it might be; but there is a slight impediment in their way. It is an infant, little and powerless, yet equity loves him as she loves everything that is weak and helpless, and will always shield such against the strong. It may seriously hurt this child that he be forced to speculate in the completion of an unfinished railroad in another state, outside of Georgia's chancery jurisdiction, and while her chancery might not care how far these *sui juris* legatees carried their speculations in building railroads and in staking much money on the venture, yet she will not turn loose a ward of chancery to stray wildly off into such a wilderness of adventure, over the Savannah river into another jurisdiction, and beyond the reach of her nursing arms. She will not force him, against his father's will, to choose such speculative chances, against the sober judgment of that shrewd and thrifty father; nor will equity choose for her ward in chancery any such venture, in the teeth of what the parent thought was best for his child.

Nor should a Georgia equity court regard as much more entitled to the election of her ward in chancery the uncertain and shifting stock in such a foreign railway company. That may be a little safer than shares in the *corpus* of the property of the road, demanding expenditures and outlays to complete it to greater extent, perhaps, than the stock; though that may also be forced, by stress of weather, to help complete the road, or sacrifice the interest already invested.

So, too, while a Georgia court of equity should always

be very civil to her sister states, and by no means depreciate their bonds or lessen their credit, yet comity hardly requires her to be so polite as to prefer the foreign securities to her own; and when one of her citizens makes a valid and legal will, the effect of which is to change the investment of a Georgia ward in chancery from bonds of North and South Carolina to Georgia bonds, the Georgia court will not be so polite toward her sisters, and so unselfish in policy as to restrain, by the harsh process of injunction, the executor of the will from selling the North and South Carolina bonds, and investing the proceeds in those of Georgia; especially when the statute law of Georgia requires the guardian so to invest; and the more especially when the court becomes such guardian in chancery, and as such alone is implored to elect for its ward. Code, §1833. And while the United States should always command the respect of a Georgia court of equity, and especially in all her fiscal agencies located within Georgia territory, yet with all the vast strides towards centralization which the government of the Union has made since the overthrow of states' rights and local self-government by the dominant national party, it has not yet been required that the states shall invest the money of their wards in chancery in the stock of the national banks, against the will of a testator who knew all about those banks; and while he was willing to invest there himself, as long as he could supervise the management, yet declared his unwillingness that his infant son should hold stock therein—dreading, doubtless, the hazard the stock would run, as by the revised statutes of the United States, sections 5140-1-2-3, bank stock is liable in double its amount in case of loss. The Georgia chancellors, being yet free to administer equity unshackled by Federal bonds, will hardly be expected to enjoin an executor from selling such stock of an infant in such a bank, managed by whom she knows not, and over which the state has no supervision

whatever, and turning the proceeds over to a guardian whose duty it will be to invest in bonds of the state.

And while courts of equity take no part in the choice of meat and drink, and suffer men to swill lager beer to the utmost capacity of stomachs, however capacious, interposing only when, by reason of stupor from the effects of continuous potations, an unhappy inebriate may be defrauded out of money or other property, yet they are not so desperately enamored of the Dutch viand themselves as to lay the heavy hand of an injunction to restrain an executor from selling the bonds of an infant on a lager beer company, in order to invest the same in other and better securities, especially as such bonds soon fall due, and are no permanent investment for one of tender years, and as the testator's will required the sale.

Thus it is seen that all of the securities, which the clear mind of the testator decreed by his will to be sold, are precarious and uncertain, or extra-jurisdictional and equally uncertain, and some actually hazardous and unfit as investments for this ward of chancery; that though the bill puffs them up in broad and glittering generalities as great and excelling, yet, by the exhibit their true character is exhibited, when open to view by the slightest crack of analysis, and thus, on the very face of the bill—for the exhibit is part of it, and the most material part—its destitution of equity and want of the slightest claim to the remedy by injunction, are apparent. Therefore, in my judgment, the chancellor could do nothing less than declare it demurrable, and refuse the injunction.

From the fact that but a single clause required this property sold, and all the rest of the testator's estate was distributed, by order of his will, in kind, the conclusion is irresistible, that the protection of this infant was in the breast of the testator when he decreed this sale and change of investment; that his will was that the balance was a good investment for the child, but that these items were not; that such being his intention, it should be car-

ried into effect, unless some overpowering necessity demanded the contrary, and not the contrary either, but such change as the testator would himself make if alive; that no such necessity or change of situation appears, but that the case made is a bald effort to coerce an infant to speculate in foreign railroads and stocks, to keep his property in bonds of other states, to risk his inheritance, or rather the legacy given him by his father in a national bank, and to retain the bonds of an uncertain brewery, and to do all this in the teeth of that father's will   There is neither equity nor policy nor morality in the bill   It is disrespectful to the parent, in that it scorns his advice and tramples on his wishes; inequitable, because it forces the infant to yield to the adult, the weak to the strong; impolitic, because it prefers other states to our own; and suicidal, so far as chancery may protect the ward, in that it deprives itself of power to look after him in a foreign jurisdiction. In every view I am enabled to take of it, the chancellor was right to refuse the injunction. To grant it, is to allow our court of equity on facts the jury, to pass judgment on the propriety of this will, and to change the wise investment decreed by the parent for his infant son. For these reasons, I dissent from the reversal of the judgment.

See, cited by defendant in error, 1 *Ga.*, 514; 10 *Ib.*, 121; 36 *Ib.*, 666; 2 Story's Eq. Jur., 1213, 1250; 18 *Ga.*, 142; 19 *Ib.*, 186; 1 P. Wms., 389; Lead. Cases in Eq. (W. & T.) 559, 569, 548; Adams Eq., 642, 284; 6 Hill (N. Y.) 416; 3 Wheat., 578–586; 2 P. Wms., 308; 30 *Ib.*, 20 note; 19 Vesey, 124; 1 Vesey, 453, notes 3, 4; 16 Ala., 409; 1 Duer (N. Y.), 286–302; 49 *Ga.*, 397; Code, §3147, 3161; 3081; 1 Iredell Eq., 251; 4 Maddox, 492; Story's Eq. Jur., 1067, 1068, 1077, 1096, 1214; Revised Stat. U. S., 5140, 5141, 5142, 5143, 5151, 5152; Code, §§2448, 2456, 2584, 3144, 3147, 2465, 1949, 3161, 2603, 2604, 1830, 1831, 1832, 1833.