## SWANN v. AUSTELL et al.

(District Court, N. D. Georgia. October 3, 1918.)

1. COURTS ☞489(13)—FEDERAL COURTS—JURISDICTION.

While the federal court will not interfere in the administration of estates of decedents, where it is necessary for the court to interfere with the actual administration, etc., *held*, the necessary diversity of citizenship and jurisdictional amount existing, that the federal court could entertain a suit looking to the determination of plaintiff's rights in the estate of a deceased person, where the management, etc., was not affected.

2. WILLS ☞802(2)—ELECTION—ACCELERATION OF REMAINDER.

Where a widow renounced the will, which gave her a life estate, etc., and was assigned dower, *held* that, as the husband's will providing that children in, being at death of wife should take in remainder, etc., showed an intention that only those of the testator's blood should take, remainders in the dower cannot be deemed accelerated, so as to allow a spouse of a child dying before the widow to take.

3. WILLS ☞853—ACCELERATION OF REMAINDER.

To work an acceleration of a remainder, the particular estate as a whole must terminate, and even then the acceleration results only from the presumed intent of the testator, and will not take place, if contrary to such intent.

4. COURTS ☞365—FEDERAL COURTS—STATE DECISIONS.

In determining rights under a will, decisions of the courts of the state of the testator's residence, wherein the property was located, are controlling.

5. JUDGMENT ☞743(2)—CONCLUSIVENESS—TITLE TO LAND.

Where plaintiff claimed property on the ground that, as testator's widow renounced the will and dower was assigned, remainders to children were accelerated, *held*, that the record of a case to which the heirs and executors were parties, involving disposition of property in which the widow would otherwise have had a life interest, was not admissible.

In Equity. Bill by Alfred R. Swann against W. W. Austell, as executor, and others. Bill dismissed.

Turner, Kennerly & Cate, of Knoxville, Tenn., and Anderson, Rountree & Crenshaw, of Atlanta, Ga., for plaintiff.

C. T., L. C. & J. L. Hopkins and King & Spalding, all of Atlanta, Ga., for defendants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

NEWMAN, District Judge. Alfred Austell, Sr., a resident of Fulton county, Ga., died on the 7th day of December, 1881, leaving a last will and testament dated February 1, 1878, which was duly probated in the court of ordinary, Fulton county, Ga., at the January term, 1882. At the time of his death there survived him, as heirs at law, his widow, Mrs. Francina C. Austell, and his four children, W. W. Austell, Mrs. Leila Austell Thornton, Mrs. Janie Austell Swann, and Alfred Austell, Jr., between whom, by the terms of the will, his property was divided.

After the probate of said will, Mrs. Francina C. Austell, the widow, filed her petitions in the superior courts of Fulton, Campbell, and Douglas counties, in each of which property belonging to the estate of the deceased was located, objecting to the will and renouncing her rights thereunder, and praying that dower be set apart to her in lands and tenements owned by the testator at the time of his death.

Upon her application, filed in the superior court of Fulton county, a decree was rendered on the 3d day of November, 1882, fixing the particular parcels of land which had been admeasured to her, and giving her as dower the home on Marietta street, and that part of the property known as the "Trout House lot," which was located on Line street, now Edgewood avenue, which was described to have approximately 100 feet frontage on North Pryor street and a like frontage on said Line street; and upon the petition filed in Campbell and Douglas counties, dower was also admeasured and decrees entered thereon, setting apart a part of the land in Campbell county, known as the "Latham plantation," and a part of the land in Douglas county, known as the "Gorman plantation." Subsequently an agreement was entered into between all parties at interest, under which the widow surrendered all of her claim of dower in the Douglas county plantation, which had been specially devised by the testator to Alfred Austell, Jr., and was granted, in lieu thereof, the remainder of the Campbell county plantation, which had not already been set apart as dower.

Immediately after the renunciation of the will and the taking of dower by the widow, the executors filed a bill in the superior court of Fulton county relating to the rights of the widow and the children in the "Trout House" property, under which a verdict and decree was rendered in November, 1886, referring in terms to the entire "Trout House lot," including that which had been theretofore set apart as dower, holding that the widow had no interest in this property, and that the executors should sell same at public auction and divide the proceeds among the four children. In pursuance of said decree, however, the executors sold only that part of the property referred to which was not set apart as dower; that is, that part which fronted on Decatur street and ran back along North Pryor street about 140 feet, to an alley which separated this part of the Trout House lot from that which had been set apart as dower.

No question is made here as to the residue of the estate, or any property belonging to the estate, except that set apart to the widow as her dower, as stated above.

On April 9, 1893, Mrs. Janie Austell Swann, one of the children of the testator, died testate, bequeathing her entire estate, of every char-

acter, except certain unimportant devises and bequests, to her hus-band, James Swann. James Swann died in April, 1903, also leaving a will, by which whatever interest he had acquired from his wife in and to any of the dower property was devised to his brother, Alfred R. Swann, who is the plaintiff here.

Mrs. Francina C. Austell, the widow, died in May, 1917, having held and enjoyed the dower lands up to the time of her death. Upon her death there still survived her three of the children of the testator, namely, W. W. Austell, Mrs. Leila A. Thornton, and Alfred Aus-tell, Jr.

The contention here is that, when Mrs. Austell, the widow, renounc-ed her right under the will and took dower, the rights of the remain-dermen under the Austell will were accelerated, and that fee-simple title at once vested in the remaindermen to the property as to which there was a remainder, when the particular estate was in Mrs. Austell. The further contention then is that Mrs. Janie Austell Swann, by the terms of the will, took, by acceleration, a vested interest in the prop-erty in which the widow was given a life estate, which interest passed by her will to her husband, James Swann, who devised it to Alfred R. Swann, the plaintiff here.

The question of jurisdiction is raised in this case, on the ground that the estate is still being administered in the court of ordinary of Fulton county, and answers have been filed which make the ques-tions hereinafter discussed.

[1] Of course, it is well understood that federal courts will not interfere in the administration of estates of decedents, where it is necessary for the court, through its officers, to lay its hands in any way upon the property, or to interfere with the actual administration of the estate. Where a case is made inter partes, the necessary diversi-ty of citizenship and the jurisdictional amount existing, a federal court can hear a case looking to the determination of the rights of the plain-tiff in and to the property of the estate of a deceased person, without interfering in any way with the possession of the property or the management of the estate. I have reached the conclusion that a de-cree could be entered in this case determining the rights of the plain-tiff, in the event the court should agree with him about the same, and should conclude that he is entitled to recover against the defendants on the case here made by him.

Mrs. Janie Austell Swann died in 1893, and James Swann, her hus-band, died in 1903, and both died testate, as stated above.

[2-4] The question arising in this case is rather unusual, and quite interesting and important. The plaintiff claims an acceleration of the remainder interest of Gen. Austell's children by reason of the widow renouncing her rights under the will and electing to take dower in the estate. He has brought to the attention of the court a number of authorities which he claims support his position that there was such an acceleration in this case, and consequently that he has a one-fourth interest in the property, the title to which, it is contended, passed to Mrs. Swann, by reason of such acceleration.

Gen. Austell, by his will, disposed of the three pieces of property

which are for consideration here. One was the home place on Marietta street, in Atlanta, Ga., one was what was called the "Trout House lot," fronting on Decatur street, and running back along North Pryor street to Line street, and the third was a Campbell county farm, known as the Latham plantation.

As to his home place he said this, in the first item of his will:

"After the payment of all my just debts, I give, bequeath and devise, to my beloved wife, Francina, the dwelling house and lot, whereon and wherein I now reside, which fronts on Marietta street in the city of Atlanta, in said county and state, being on the south side of said street, and is bounded on the west by the lot of the First Presbyterian Church of Atlanta, on the east by the lot of C. Kontz, except that portion of said lot which fronts on the right of way of the Western & Atlantic Railroad, and extends back from said right of way to the back line of said lot of said First Presbyterian Church.

"To have, hold, use, and occupy, as a home for her and our children for and during the natural life of my said wife, or until she shall marry again.

"Upon the happening of either of which events said property shall go to and belong to my children that may be living at the time of the death or marriage of my said wife, share and share alike, or if any of my children shall be dead, at that time, leaving children surviving them, such last mentioned children shall take the share of their deceased parent.

"And I expressly devise and direct that the said dwelling house and lot shall not be incumbered by, or subject to the payment of any debt or debts, she, my said wife, may contract, or any contracts she may make, but shall remain, during her life, or widowhood, a secure and unmolested home and residence for her and my said children, while they reside with her, and under her maternal care and protection; not meaning by this, however, that she shall be compelled to have any of our children live with her, unless she shall so desire."

The meaning of this item is very plain. The home place on Marietta street was to go to Mrs. Austell as a home for life, or widowhood, with remainder after her decease, or if she married, to their child or children then living—that is, living at the time of Mrs. Austell's death or marriage—or to the child or children of any deceased child or children.

Mrs. Austell renounced the will and elected to take dower, which was admeasured to her in the home place on Marietta street, the rear of the Trout House lot, that is, the part fronting on Line street, now Edgewood avenue, and running back along North Pryor street to an alley, and also in and to the farm in Campbell county, known as the Latham plantation.

Gen. Austell disposed of the Trout House property in the second item of his will, which, with the directions he gave as to this, is as follows:

"It is my will and desire, and I hereby devise and direct that my executors hereinafter named, shall not sell, during the life of my said wife, any of my store houses, or other houses, on the lot known as the 'Trout House' lot, on the corner of Decatur and Pryor streets, in said city of Atlanta, fronting on Decatur street one hundred feet, more or less, and extending back at right angles with Decatur street, and on Pryor street, to Line street, but they may build, out of any funds that may come into their hands, if they deem it best, other store houses on the part of said lot adjoining the building known as the Austell corner.

"I direct my said executors to collect the rents of the storehouses, or other houses, as may be on said 'Trout House' lot, and out of the rents so collected, that they pay my said wife the sum of two thousand dollars, payable in

equal quarterly payments, for each and every year of her natural life, whether she marries again or not.

"And my executors are directed to take the receipt for the same from herself alone and to pay it to no other person.

"My executors are further directed, after paying my said wife the sum of money aforesaid, to divide the balance equally between my said children, and after the death of my said wife to sell the said store houses and lot and divide the proceeds of such sale among my children, share and share alike, the child or children of any deceased child of mine to take the share of their deceased parent."

The Latham plantation is disposed of in the ninth item of the will, which is as follows:

"I further will and direct that all the residue of my estate, of whatever kind or nature, whether real, personal or mixed, not hereinbefore disposed of shall be sold, or converted into money, by my executors, at such time and place and under such circumstances, as they may deem best, by public sale, such reasonable notice of time and place of sale as they may deem best, to be given by publication and the proceeds to be equally divided between my children, share and share alike."

It appears from this that no life estate vested in Mrs. Austell by the will except her life estate in the home place on Marietta street. Both as to the "Trout House" lot and as to the farm in Campbell county, no life estate was created in any one. On the contrary, as to both of these places, the direction of the will was, first, as to the "Trout House" lot, that the rents should be collected and as much as $2,000 annually paid to his wife, and, as to the Latham plantation, it was to be converted into money, at the discretion of the executors, and the proceeds divided between his children. So I am unable to see how the doctrine of acceleration can affect at all the property covered by these two items of the will. The only property here to which his contention can apply, if it applies to that, is the home place on Marietta street.

In determining how far the doctrine of acceleration of remainder interest applies to this place, let us get first what was the intention of the testator as to this property. The Supreme Court of Georgia, in Toombs v. Spratlin, 127 Ga. 762, 773, 57 S. E. 59, 60, says this:

"To work an acceleration of a remainder, the particular estate as a whole must terminate. And even then the acceleration results, not from any arbitrary rule, but from the presumed intent of the testator, and will not take place if contrary to his expressed intent."

The provision of the will as to this home place is:

"Upon the happening of either of such events [that is, the death or marriage of Mrs. Austell] said property shall go to and belong to my children that may be living at the time of the death or marriage of my said wife, share and share alike, or if any of my children shall be dead, at that time, leaving children surviving them, such last mentioned children shall take the share of their deceased parent."

The tenth item of the will is as follows:

"In any item of my will, where a division of property is directed to be made, between my children, I hereby declare it to be my will and desire that if any of my children should be dead, at the time such division is to be made, leav-

ing any child or children surviving them, that such surviving child or children shall take the portion of their deceased parent.

"And in the event any of my children shall die, before the division of any part or the whole of my estate, as provided for in this, my will, leaving no issue, or surviving children, then it is my will and desire that the portion of my estate that would have otherwise gone to such deceased child or children, shall be divided between my other surviving child or children, share and share alike."

The latter·part of this item is the important part here; that is, the portion which provides how the property shall go in the event any of his children should die leaving no child or children. It is perfectly clear from this, as to all of his property, Gen. Austell desired, as to a certain portion of the estate, that same should be sold and divided as provided in the will, and, as to property which would become available for distribution upon the death of his wife, it should be similarly divided, that is, among his children, and, if any child should die leaving descendants, to the descendants of such child in lieu of the parent, and, if any of his children should die leaving no child or children, then to the other children. This provision by Gen. Austell as to his desire with reference to his property and his intention runs all through the will and is too clear to be mistakable.

Construing the clause in the will with reference to the home place in the light of the rule I have stated from the case of Toombs v. Spratlin, supra, in which the Supreme Court of the state has said that acceleration results not from any "arbitrary rule," and will not take place contrary to the testator's express intent, it seems to me that the intention of Gen. Austell in this will is too plain to be questioned. Of course, it is a Georgia case, and Georgia property, and a Georgia administration, so that necessarily the views of the Supreme Court of the state are not only important and persuasive, but really controlling.

The view that I take of this clause of Gen. Austell's will is, I think, strengthened by the decision of the Supreme Court of the state·in two cases where this will was before the court. The first of these is the case of J. M. High & Co. v. Austell, 133 Ga. 427, 65 S. E. 884, and the other is the case of City of Atlanta v. Austell, 146 Ga. 456, 91 S. E. 478. While not a great deal is shown as to what was decided in the report of the cases, from what seems to have been conceded by both counsel in their argument before this court, the question now before this court was argued in one of those cases at least, and must have been considered by the court.

Two other cases have been before the Supreme Court of Georgia in which this will was brought to the attention of the court. The first is the case of Swann v. Garrett, 71 Ga. 566, and the other is the case of Austell v. Swann, 74 Ga. 278. In the first case, Swann v. Garrett, I do not think it affects the question here, first, because the decision was made by a divided court; and, second, because the decision whether the fee in the property covered by the ninth item of this will vested at once in those who were to take under that item seems to me to be immaterial to a decision·of the question then before the court, which was the distribution of the property covered by the ninth item of the will in kind, instead of by a sale of the property and a division of the

money arising from the sale. This is clearly borne out by an examination of Judge Jackson's dissenting opinion, because his dissent is based upon entirely different grounds; that is, on the ground of whether it is advisable to divide property in which an infant heir has a share in kind between the heirs, or whether it should be sold and the proceeds divided. That is all that Judge Jackson refers to in his dissenting opinion, and does not seem to have given any serious consideration to the other question, as to whether or not the estate vested under the ninth item of the will, but simply refers to the question, apparently, of the advisability of selling, instead of a division of the property in kind.

The case of Austell v. Swann, supra, it seems to me is wholly immaterial to anything before this court.

Counsel for the plaintiff here relies upon a case decided in this court some years ago, the Case of Haslett, 116 Fed. 680. It is claimed that the rule adopted and announced by the court in that case would control in their favor in this case. I do not think so. I think the Case of Haslett was an entirely different case from this. Haslett evidently intended, by the deed he made, that title should vest in his children, because he provided that his wife should be trustee for them during their minority, and should be authorized to sell, if necessary, and convey title to their remainder interest, as well as her own life estate. Gen. Austell evidently did not intend that his home should be molested in any way until after the death or possible marriage of his widow. He intended it to remain as a home for Mrs. Austell and such children as she might desire to live with her.

Quite a number of authorities have been cited by counsel for both sides in this case, and I have gone through them; but I do not see, in the view I take of the case, that a discussion of them by me would be essential in any way to a decision of the case. I concede the doctrine of acceleration of remainder interests in proper cases, but I do not think it is applicable here. I think the intention of Gen. Austell is too plain from this will to be ignored, and that should govern in its construction.

[5] Objection is made to the admission in evidence of so much of the record as is available in the case of W. J. Garrett et al. v. Alfred Austell et al. The pleadings in the case are lost, but the verdict of the jury has been obtained. It appears from what we have of the record that the executors were authorized to sell the front part of the Trout House property (that is, the Decatur street end), and divide the proceeds among the children, all being in life at that time, and it seems the property was sold under this decree. Apparently the verdict applied to the whole of the Trout House property, but it is conceded by all of the parties here that it was a mistake, and was never intended to apply, and never was actually applied, to anything except the Decatur street end of the lot.

The decree seems to recognize what was undoubtedly true; that is, that when Mrs. Austell had taken dower, and it had been admeasured to her in the property which has been heretofore referred to, there was no longer any reason why the front part of the Trout House lot, which was unaffected by her dower, should not go to the children at once.

Mrs. Austell had no interest, after she took dower, in the rents of the front part of the lot, and, indeed, had no interest of any kind, so it was perfectly legitimate, all parties being before the court, the executors, apparently, and all other parties at interest, that a verdict should be rendered and a decree entered, on a proper showing before the court that it was advantageous to sell the property and distribute the proceeds, that a sale should be made. I do not see how this affects in any way whatever the question now before the court.

Being entirely satisfied, after a thorough examination of this case and of the legal questions involved, that the plaintiff here has no rights in and to any part of this estate, because Gen. Austell's intention is perfectly clear, and that is that the property was to go, in any event, to the children of his own blood, no decree can be rendered in the plaintiff's favor, a decree may be entered dismissing the bill, with costs.