No. 49.—SOLOMON B. MURPHY, plaintiff in error, *vs.* THE JUS-TICES OF THE INFERIOR COURT OF WILKINSON COUNTY, defendants in error.

[1.] When there is money in the hands of a Sheriff, raised from the sale of a runaway slave, by virtue of a process issued in the name of the Clerk of the Inferior Court, on an order of the Justices of the Inferior Court; it is according to law to move a rule against him to require him to pay it over, in the name of the Inferior Court, and it is also competent for the Justices to preside on the trial of an issue formed on a traverse of the Sheriff's return to such rule.

[2.] If, on the trial of a cause, illegal testimony be admitted, a new trial will not be granted on that account; provided it is clear that there was evidence sufficient before the Jury to authorize the verdict, independent of the illegal testimony.

[3.] To a rule calling upon the Sheriff to pay over money, he returned that the money had been raised and paid over to the person authorized to receive it. Upon a traverse of such return: *Held*, that the Sheriff will be held to prove his averment that the money had been paid over.

Certiorari, in Wilkinson Superior Court. Decided by Judge JOHNSON, April Term, 1852.

The Inferior Court of Wilkinson County, ordered the sale of a runaway negro, named Anthony, after a due advertisement of the same, as required by law. The Clerk of the Inferior Court issued a process, which he termed an attachment, requiring the Sheriff to sell, &c. The Sheriff levied this process on the negro, Anthony, and made the following return thereon :

" The above levy sold for four hundred and fifty-one dollars, and after deducting all costs and expenses, leaves a balance of two hundred and forty-seven dollars and twenty-five cents, paid to this attachment.                    S. B. MURPHY, Sh'ff."

Subsequently the Inferior Court passed an order as follows :

| THE JUSTICES OF THE INFERIOR COURT, | Attachment from Wilkinson In- |
| vs. | ferior Court, returnable to Jan- |
| ANTHONY, a runaway negro man, slave. | uary Term, 1847. |

It appearing to the Court that Solomon B. Murphy, late Sheriff, has collected on the above stated attachment, the sum of $451: It is ordered that he show his actings and doings in relation thereto, &c.

The Sheriff made return thereto, that he paid out for fees and expenses, $252.58, leaving a balance of $198.42, which amount he paid to A. B. Raiford, late Treasurer of the County. This return was sworn to by the Sheriff.

A traverse was filed to this return, and issue formed thereon.

Upon the trial of this issue in the Inferior Court, Murphy, by his counsel, objected to the Justices of the Inferior Court sitting in the cause, on the ground that they were the parties plaintiff of record, which objection was overruled and excepted to.

He then objected to the farther progress of the cause, on the ground that the Clerk, and not the Justices of the Inferior Court, was the proper party; which objection was overruled and excepted to.

Murphy *vs.* The Justices of the Inferior Court of Wilkinson County.

Plaintiff's counsel tendered in evidence, the deposition of A. B. Raiford, late Clerk and Treasurer, to show that the balance was never paid over to him.   Defendant's counsel objected, on the ground that Raiford was interested and an incompetent witness.   The objection was overruled and excepted to.

On these exceptions a writ of certiorari to the Superior Court was sued out, and on hearing the return thereto, Judge *Johnson* refused to sustain the writ; overruling the 1st and 2d grounds, and holding that there was evidence sufficient to sustain the verdict, without the testimony of Raiford.

In addition to the return on the attachment, it was proven that the books of the Clerk and Treasurer showed no money paid from the sale of said negro to the Clerk.   There was no proof on the part of the Sheriff that he had paid the money to Raiford, the Clerk.

Exceptions were filed to Judge *Johnson's* decision, and error assigned thereon.

Cochran, for plaintiff in error.

Bower, for defendant in error.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The first exception which I consider is, that the Inferior Court of Wilkinson County were not the proper parties to move the rule against the Sheriff.   The arguments to sustain this exception are, that the process under which the Sheriff raised the money by the sale of the negro, issued in the name of the Clerk of the Inferior Court; that by law the fund is payable to him; that he is the only person who could move the rule, and therefore the Inferior Court cannot move it.   The law directs that runaways, when committed to jail, shall be advertised, and if no owner appears, the Jailer shall notify the Justices of the *Inferior Court;* whose duty it shall be to cause the slave to be levied upon by the Sheriff, and after being advertised, to be sold by him on the first Tuesday in the month, unless a claimant shall appear and

prove property in him ; after paying jail-fees and all other expenses incurred on account of the slave, the balance of the money raised from the sale, is to be paid to the *Clerk* of the *Inferior Court*, and becomes a County fund, to be used as such ; provided farther, that if within twelve months after the slave is sold, any person shall appear and prove property in the slave, the *Justices of the Inferior Court* shall order the amount thus paid to the Clerk, to be paid to such person. *Cobb's New Digest*, 1003, 1004. This record discloses that the *Inferior Court* passed an order directing the slave, *Anthony*, to be sold, and the *Clerk* issued a process in his own name, reciting this order, directed to the Sheriff, requiring him to advertise and sell him, returnable before the *Inferior Court* of Wilkinson County. It does not appear that any claim to the slave was put in, either before the sale, or within twelve months thereafter. No claim whatever was established at any time. By Statute, then, the proceeds of the sale, after paying jail-fees and other expenses, became a fund belonging to the County of Wilkinson. The *Justices* of the *Inferior Court* are by law, the public agents or trustees of all County funds, and it is competent for them in that character, to institute such process or proceedings as may become necessary for the collection and safety of such funds. *Justices of the Inferior Court vs. Plankroad Company*, 9 *Ga. R.* 485, '86.

Upon this principle, it was legally proper for them to move against the Sheriff for this fund—nay, it was their duty to do so. No matter how the fund came into his hands—if it was a County fund, it was their duty to collect it; not as a Court, but as the agents of the law, charged with the general supervision and control of the property and money of the County. The *Clerk*, in issuing the process, acted ministerially. He has no authority to issue the process, without an order from the *Justices*. It was that order that gave vitality to the process. The *Justices* alone could order the sale, and upon that order, without a process, I have no doubt the Sheriff could have sold the slave. Electing, as they may do, to issue a process, they used, as they may do, their Clerk for the purpose. The fact that the money is by law payable to him, gives him no power over it—he is

simply the depository.   The legal control over it is in the Court. We find no objection to the ruling of Judge *Johnson* on this exception.

The next exception is, that the *Justices of the Inferior Court* could not try the issue on the traverse of the Sheriff's return, because, being parties to the proceeding against the Sheriff, they were sitting as judges in their own case.   They were parties, as public agents, and not in their own right as citizens.   It was not their case, but that of the County.   They had no interest in the cause, different from, or greater than that of any other citizen.   They occupied the position of naked trustees. The money, when paid over, would not go into their hands, but into the hands of the legally authorized depository of the County. By law, they have jurisdiction both of the subject matter and of the Sheriff.   The whole of this record shows, that the proceeding was instituted to compel the payment of a public fund in the hands of the Sheriff; it shows how it was raised, and the final judgment passes it from the Sheriff to the custody of the law, and I do not entertain a doubt but that that judgment will be a complete bar to any subsequent proceeding instituted by the Clerk, or any other person, for the same money. We are satisfied that this exception was not well taken.   *See the case of The Governor, &c. vs. Richard Basset and his sureties, determined at Macon, in February,* 1852.   *Ante.* 207.

[2.] On the trial before the Inferior Court, the Clerk who was in office when the money was raised, a Mr. Raiford, was sworn, to prove that the Sheriff had not paid the money to him.   He was objected to, as being incompetent from interest.   The objection was overruled, and the ruling excepted to in the *certiorari.* Judge *Johnson* very properly decided against the competency of Raiford, but refused to send the cause back, upon the ground that independent of the testimony thus illegally admitted, there was evidence sufficient before the Jury that tried the traverse, to warrant their verdict—which was against the Sheriff.   It was clearly competent for him to do this.   It is well settled that a new trial will not be granted upon the ground of the admission of illegal evidence, if without that, it is manifest that from the evi-

336    SUPREME COURT OF GEORGIA.

Murphy *vs.* The Justices of the Inferior Court of Wilkinson County.

dence, the Jury were obliged to find as they did find. That is the rule of this Court—of the Superior Court, upon a motion for a new trial, and also upon the hearing of a certiorari.

Was then, Judge *Johnson* right in holding, that beside the illegal evidence, there was, plainly and incontrovertibly, testimony sufficient to warrant the verdict?

Upon the trial of the traverse, the process was in evidence, with the Sheriff's return thereon of the sale—of the disbursement for jail-fees and other expenses, and exhibiting a balance of upwards of two hundred dollars. His return to the rule acknowledged the sale—set forth the amount—the amount of payment on account of jail-fees and other expenses, and presented a balance of some $198.42, which balance the return states, was paid to A. B. Raiford, the Clerk and Treasurer. It was also proven that the books of the Clerk and Treasurer showed no payment of this fund to him. There was no evidence for the Sheriff, except, that one witness testified, that he heard the Clerk ask the Sheriff for a settlement of this money, and that afterwards he heard the Clerk say that he had a settlement with the Sheriff, but whether the settlement spoken of was of this particular fund, the witness stated he did not know. Now, it is clear that the return on the process, and the admissions in the return to the rule, prove the balance in the hands of the officer for which the verdict was rendered. Upon this proof he is necessarily liable, unless he discharges himself by showing that he has paid it over, according to his response—or by proof of something else which is in law a discharge.

[3.] It was insisted in the argument, that upon a traverse, under our Statute, of a Sheriff's answer to a rule to pay over money, the return is *prima facie* evidence for him, and the traverser takes the burden of disproving it. Such is not the rule, without very important qualifications. The movant of the rule assumes the burden of proving the money in the hands of the Sheriff. If the Sheriff in his return denies the receipt of it, and it is traversed, the traverser, who is still the movant, would be compelled to disprove his return, and show that he has received the money. But in a case like this, where the return admits

the receipt of the fund, and goes on to aver a payment over, such averment is not evidence to discharge the Sheriff, but he will be held to prove it.   He cannot both charge and discharge himself. He will not be permitted to be his own witness, and put his adversary upon proving a negative.   He certainly is not in a more favored condition than a defendant in Equity, who is always held to proof of independent matter set up in his answer, in discharge or avoidance.   Here the Sheriff did not sustain his averment, that he had paid the balance to the Clerk, by any evidence whatever, upon which a Jury could act.   He stood charged with the fund by his return on the process and by his return to the rule, corroborated by the fact that no entry was found on the books of the Clerk, whose duty it is by law, to make such entry.   If he had paid it over, it was incumbent on him to show it by legal proof; that he did not do, and the Jury, in our judgment, could not have found otherwise than they did.

Let the judgment be affirmed.