DAVID L. BECK, plaintiff in error, *vs.* THE STATE OF GEOR-
GIA, defendant in error.

57 351
108 64

1. According to the evidence, there was, at the time of the homicide, no such imminent danger to the prisoner's person or property as to render the killing absolutely necessary for the defense of either; nor was there any assault upon the prisoner, or any attempt to commit a serious personal injury upon him, or anything equivalent thereto to justify the excitement of passion and to exclude all idea of deliberation or malice.

2. Even in a case of capital punishment, the verdict may be left to stand though some competent evidence was excluded on the trial, if it be perfectly clear, beyond all doubt, that the conviction and punishment would be no less rightful with the excluded evidence in than with it out: *14 Georgia Reports, 43; 35 Ibid., 303.*

Criminal law. Evidence. New trial. Before Judge UNDER-
WOOD. Chattooga Superior Court. March Term, 1876.

Beck was indicted for the murder of R. H. Shamblin.

On the trial, the evidence for the state was, in brief, as fol-
lows: On the morning of October 28th, 1875, one McEn-
tyre was working in a corn-field in Chattooga county. He
saw defendant get up from behind a tree just outside the en-
closure, with a gun in his hands. Defendant ordered him
to leave the field; then getting over the fence, inquired for
Shamblin. McEntyre replied that he did not know where
Shamblin was. Just then defendant saw Shamblin several
yards distant, crossing the field; and saying, "By-God, yon-
der he is now," walked towards and met him. Defendant
raised his gun and said "Stop, God-damn you, stop!" Sham-
blin replied, "I am stopped; don't shoot." The defendant
then turned the gun over, as if to strike with the breech, and
walked up close to Shamblin. The latter said, "Don't do
that, Mr. Beck, I am going to Mrs. Claudis'; I don't want
a fuss with you;" and started to walk away. Defendant rais-
ed his gun and fired; they were about four or five paces apart.
Shamblin screamed, and ran to the house of Mrs. Claudis,
which stood near by. Here he was put in bed, and medical
attendance summoned. He died about one or two o'clock the

following night. His death was the result of the wounds. Deceased had nothing in his hands when shot.

The evidence for the defendant was, in brief, as follows:

Defendant and Shamblin each claimed title to the corn growing in the field in which the homicide occurred. They were involved in litigation about it, each party having taken out possessory warrants against the other, and Shamblin a warrant against Mrs. Beck, defendant's wife. A short time previous to the killing, defendant was arrested under a warrant sued out by Shamblin. The latter, about the time of the arrest, stated to several parties that he intended to have the corn, if it cost him his life; that defendant was a coward and could be frightened with a pen-knife, and other equivalent expressions. One witness (Ragland) testified that Shamblin said he would have the corn or "cut Beck's guts out." McEntyre was employed by Shamblin to gather the crop in dispute.

Defendant's statement was, in substance, as follows:

Had no intention of shooting Shamblin when they met in the field. When the latter said "don't shoot," turned the butt of the gun towards him; told him to get out of the field; he replied that he would "when he got ready." When defendant fired Shamblin had a knife in his hand, and was apparently about to spring upon defendant.

The jury found a verdict of guilty. Defendant moved for a new trial on substantially the following grounds:

1st. Because the verdict was contrary to law and the evidence, and without evidence to support it.

2d. Because the court refused to allow Ragland, a witness for the defense, to testify as follows: Defendant sent word by him to the deceased that he did not want any fuss or trouble with him, and that he hoped the contest about the corn would be peaceably settled; and it was in reply to this that deceased said that he would have the corn or "cut Beck's guts out." The answer was admitted, but the message excluded.

The motion was overruled, and defendant excepted.

J. M. Bellah; J. G. Glenn; Dabney & Fouche, for plaintiff in error.

C. T. Clements, solicitor general; Alexander & Wright, for the state.

Bleckley, Judge.

1. We have searched the evidence in vain for any fact that made the homicide necessary at the time it was committed, or that would justify it, or reduce it below the grade of murder. There was bad feeling between the parties; they were in an ill-tempered controversy about property; the deceased had used improper language while the controversy was pending, showing a determination to maintain his supposed rights by violence; but he had not gone to the extent of committing a breach of the peace, and we cannot discover from the evidence that he attempted or intended any act of hostility against the prisoner at the time the prisoner slew him. What he said was said on previous occasions. At the last fatal interview, he seems to have behaved with propriety, and neither by word or deed, to have given the prisoner cause to attack him. He had not forfeited his life; and in taking it, the prisoner assumed the grave responsibility which is about to overwhelm him.

2. It is not clear that some little evidence excluded by the court was not admissible. Perhaps it was admissible; but whether it was in or out could have made no difference in the result. None of the excluded evidence bore directly on the main transaction; it did not relate to what took place on the occasion of the homicide. The whole strength of the case is, that under the circumstances then and there existing, there was no good reason for killing the deceased—that the killing might have been let alone by the prisoner, and that he, nevertheless, committed the homicide. The evidence kept out would not have changed the real case one iota. There is no cause in the record for granting a new trial.

Judgment affirmed.