CARR *v.* THE CITY OF CONYERS.

84   287
125   698
126   65.
e126   66¹

1. Quarrelling, as related to police, is the exchange of angry utterances between two or more persons, and not the mere use in an ordinary tone of vituperative and threatening words by one to another who remains silent. Where the charge is also for cursing, and the words of the accused, as repeated by one witness for the prosecution, were free from profanity, and the only other witness repeats them as including the word "dam," "or something to that effect," the alleged cursing is not proved.
2. To consign to the chain-gang for failure to pay a fine imposed for violating a municipal ordinance, it is at least necessary that the power should be conferred by statute.

January 20, 1890.

Criminal law. Evidence. Municipal corporations. Before Judge BOYNTON. Rockdale county. At chambers, May 29, 1889.

Ike Carr was brought before the mayor of Conyers charged with "quarrelling, cursing and acting otherwise disorderly" in the corporate limits of Conyers, on May 1, 1889. On May 21, 1889, he was found guilty and sentenced to pay a fine of $10 and costs, and upon failure to pay the same, that he work in the city chaingang for 25 days, and then be discharged. On his trial before the mayor one Jones testified that, in front of a furniture store of a Mr. Tucker, defendant met him on the sidewalk and told him he had sworn a lie on him (defendant) and he could whip witness in two minutes. Smith, the marshal, was about three feet off. Defendant told witness he had told a lie on him in the mayor's court and he could whip him in five minutes. No one was present but Smith, and no one was near on the streets. Smith, the marshal, testified that defendant had been fined to work on the streets 15 days by the

mayor, on the first of May, on a charge of fighting, quarrelling and acting otherwise disorderly. Witness took him out of the court-house and went on down with him to get some tools and put him to work. When they were going down the street, defendant said that Jones swore a lie on him and he would whip him for it if it took him ten years. They met Jones on the street and defendant told him he had sworn a dam lie on him, or something to that effect, and he could whip him. There was no one near but witness, Jones and defendant. What defendant said was in an ordinary tone. Jones testified against Ike in the other case. One Langford testified that he was in the back part of his store and heard a noise towards the front door. Went up there, and Smith had defendant and was taking a knife out of his pocket. Heard some talk, but could not tell anything that was said.

The defendant made the following statement, in brief: Jones testified before the mayor on the first case that defendant and his wife were fighting and quarrelling and acting otherwise disorderly, which was not true, and the mayor sentenced him to work on the streets fifteen days. Smith took defendant, and they went down the street, and in front of the furniture store defendant saw the mayor and Jones going in the store, and they were having a big laugh and glee over the matter, and it made him mad, and when Jones stepped out, he told Jones he had sworn a lie on him, and he could whip him (Jones) in five minutes. This was said in a low tone, and no one was present but Smith, Jones and defendant. Jones told Smith to make a case against defendant, and Smith grabbed him and told him he had a knife in his pocket and to give it to him (Smith). Defendant told him he had one. Smith became excited and talked loudly, and Langford came to the door. That was all that was said or done.

Defendant was fined for nothing in the first case, and had had no fight or quarrel with his wife.

Defendant, by petition for *certiorari* to the superior court, alleged as error that the court had no jurisdiction of the offence; if anything, it was simply abusive language likely to cause a breach of the peace, and could not be tried except on indictment; it did not disturb the town, but was simply a personal matter in which the town had no concern; and that the judgment and fine were contrary to law and evidence, and the fine was excessive, cruel and unusual. The writ of *certiorari* was refused, and defendant excepted.

G. W. Gleaton, for plaintiff in error.

J. C. Barton and J. R. Irwin, *contra*.

Bleckley, Chief Justice.

1. The charge on which Carr was tried by the mayor was for "quarrelling, cursing and acting otherwise disorderly." It may be assumed that the city had a valid ordinance embracing the matters of this charge, as nothing to the contrary is alleged in the petition for *certiorari*. *Phillips* v. *Atlanta*, 78 *Ga.* 773. The evidence upon which the mayor founded his judgment is correctly set out in the official report. Did that evidence establish the charge? It shows no disorderly conduct on the part of Carr otherwise than by the use of words. Did his vituperative and threatening words amount to quarrelling? They were spoken in an ordinary tone. Jones, the person of whom they were spoken and to whom they were addressed, made no reply. There was no altercation, dispute, brawl or angry contest. It seems to us that it takes two to make a quarrel; that a quarrel cannot be *ex parte*. Certainly so, unless the speaker utters his words in a loud and angry tone. Even then his conduct would be better described as disorderly conduct by loud and angry speaking, than by denominating it quar-

v 84-19

relling. No doubt Carr attempted to raise a quarrel, but the attempt wholly failed. He took the initiative, but the other party declined to participate. So no quarrel ensued. Was it proved that he cursed ? His words as repeated by Jones were that he, Jones, had sworn a lie on him, and he could whip him in two minutes ; that he told a lie on him in the mayor's court, and he could whip him in five minutes. As repeated by Smith the marshal, they were that Jones swore a lie on him, and he would whip him if it took him ten years ; that he swore a "dam" lie on him, or something to that effect, and he could whip him. The marshal seems not to be certain that the word "dam" was used; and Jones, who seems to testify without any doubt, makes no reference to any such word. We think the sounder conclusion in a criminal proceeding would be that the word was not used. So construing the evidence would only be giving the accused the benefit of the reasonable doubt which the mind ought to entertain on the question. What the evidence really shows is, not that the accused was quarrelling, cursing or acting otherwise disorderly, but that he violated section 4372 of the code, by using opprobrious or abusive language tending to cause a breach of the peace. But of that offence the municipal court had no jurisdiction, nor was Carr charged before the mayor with its commission.

2. The judgment passed by the mayor was that Carr pay a fine of ten dollars and costs, and upon failure to pay the same, that he work in the city chain-gang for twenty-five days and then be discharged. So much of this judgment as sought to enforce the payment of the fine by consigning the accused to the chain-gang was unwarranted, there being in the charter of Conyers no express grant of power to enforce the payment of fines by such means. *Brieswick* v. *Brunswick*, 51 *Ga.* 639 ; 1 Dillon Mun. Corp. §353 ; Horr & Bemis Mun. Pol.

Ord. §155. In *Cobb* v. *Dalton*, 53 *Ga.* 426, the power exercised was expressly conferred. True, the charter of Conyers (Acts of 1880–1, p. 373), besides authorizing the use of a city chain-gang, adopts section 786 of the code and makes it applicable to that city. But we think the words "the council shall have power to make and pass all needful orders, by-laws, ordinances, resolutions, rules and regulations, not contrary to the constitution and laws of this State, and to prescribe, impose and enact reasonable fines, penalties and imprisonments in the county jail, or the place of imprisonment in said incorporation, if there be one, for a term not exceeding thirty days, for the violation thereof," confer no power even to imprison for non-payment of a fine, much less to use the chain-gang as a consequence of such non-payment. The imprisonments authorized are to be for the violation of by-laws, ordinances, etc., and not to enforce fines for such violation. Should it be thought that, by the terms of the mayor's sentence we are reviewing, the chain-gang is not used to collect a fine but as an alternative punishment for the offence, we answer that, according to the case above cited of *Brieswick* v. *Brunswick*, such a construction of the mayor's sentence would be incorrect. Moreover counsel for both parties cited us in the argument to a printed copy of the ordinances of the city of Conyers, from which it appears that alternative punishments are not provided for by these ordinances or by any ordinance of the city applicable to this class of offences. We think the judge erred in refusing to sanction the application for a *certiorari*.                    *Judgment reversed.*