29272. HEATH *v.* CITY OF ATLANTA *et al.*

86

DECIDED MARCH 27, 1942.

*McElreath, Scott, Duckworth & Riley,* for plaintiff in error.

*J. C. Savage, E. L. Sterne, J. C. Murphy, F. A. Hooper Jr.,* contra.

GARDNER, J. This case is here on exceptions to a judgment dismissing a certiorari to review a ruling of the police committee of the City of Atlanta. The petition for the writ was sanctioned. The defendant in error answered, which answer was traversed. On the hearing an oral motion was made to strike the traverse and dismiss the certiorari, which motion was granted.

The defendant, a policeman, was charged, as follows: "You are hereby charged with conduct unbecoming an officer of the police department of the City of Atlanta and with violation of the rule of said department in the particulars set forth in the affidavits hereto attached and marked 'Exhibit A.' You are hereby notified to be and appear before the police headquarters, at 7:30 o'clock, p.m., on the 30th day of January, 1941, to answer said charges. This the 15th day of January, 1941. M. A. Hornsby, chief of police." Exhibit A is as follows: "I, Janelle Neel, make this statement of my own free will and accord: 'Saturday night, January 4th, 1941, about 11:30 p.m. a boy by the name of Jimmie,

that last name I do not remember, came into the Francis Coffee Shop where I work and asked me for a date which I gave him; then he said that he had a boy friend, and wanted me to get a date for this friend. I told him that I had a roommate and might be able to get her. Jimmie and I got into the automobile and drove to Brown's Buffet, where the girl friend works. She accepted the date and Jimmie then said that we would go and see his boy friend and make arrangements for him to go. About 12:00 midnight Jimmie came back; me and my girl friend named Florine Smith, got into the car and drove to police station and picked up Lieutenant C. L. Heath. Lt. Heath got into the car and told Jimmie to drive out to his house on Cooper Street and he would get some whisky, and we drove out on Cooper Street where Lt. Heath got out of the car and went into a two-story house, going upstairs and came back with a quart of Seagrams 5 Crown Whisky. We then drove out to LaBlanc's on Ponce de Leon, where all of us took a drink from this bottle. We then left there and went out some highway to a road house; what highway I do not know. We parked there, a man come out of the road house, and one of the boys stated to the man that they wanted to get a double cabin, and I, Janelle, told them that they were crazy, that I was not going to a cabin. I got out of the car and they told me to get back into the car and they would carry me home. We all got into the car and had been riding about three minutes and I heard a lick pass. I looked back and saw my roommate crying. I told Lt. Heath that he could not do that, that the girl had not done anything to him, and at that time he struck me. We rode down the road a short distance and Jimmie stopped the car and said, 'Let them get out and walk.' I got out of the car and Miss Smith started to get out, and Jimmie said [to] get back in and they would carry us home. After Lt. Heath had struck us both, he told Miss Smith that if she reported this that he would run her out of town; for her to take it and like it. When he struck me in the mouth, it caused a tooth to abscess and I had to go to a dentist. He also blacked my eye and the eye of Miss Smith. They then drove us back to 95 Merritts Avenue where we live, and we went upstairs. Lt. Heath was in full uniform.' Signed: Janelle Neel." The second exhibit A was to the same effect. The police commission, including the mayor, tried the defendant, found him guilty of the charges, and dismissed him from the police force.

The record presents the following questions: (1) Would a certiorari lie? (2) Was it necessary to set out in the petition the ordinance or the substance of it? (3) Did the presence of an assistant attorney for the city, who conducted the prosecution before the commission, invalidate the proceedings by virtue of an ordinance providing that neither the city attorney nor his assistant shall be competent to engage in such a proceeding unless instructed so to do by the mayor and general council? (4) Was the arraignment and trial of the defendant nugatory because a member of the commission received the report of misconduct of the defendant and instructed a police officer to investigate the same, and such instructed police officer did so investigate and did obtain the affidavits on which the charges were based, on the ground that such member of the commission usurped the duties and powers of the chief of police in instructing the police officer to make such investigation? (5) Should the judgment be reversed on the ground that the police commission, after the evidence closed, went into executive session, excluding defendant and his attorney and retaining the city attorney and other persons in the session? (6) Was it error requiring a reversal for the commission to admit illegal testimony?

■ The record presents a proceeding of a judicial nature. It is, we think, well settled generally and particularly in Georgia that a proceeding in the nature of a judicial one is always subject to review by certiorari. We have examined at length the constitutional provision contained in the Code, § 2-3205, and the decisions on this question. We are certain that the proceedings in question were reviewable by the writ of certiorari, under the provision of the charter of the City of Atlanta; see Ga. L. 1905, pp. 613, 616, and the allegations of the petition. It is not deemed essential to discuss in detail the many decisions sustaining this view. We cite a number of decisions which we think are controlling: *Mayor &c. of Macon* v. *Shaw*, 16 *Ga.* 172; *Asbell* v. *Brunswick*, 80 *Ga.* 503 (5 S. E. 500); *Gill* v. *Brunswick*, 118 *Ga.* 85 (44 S. E. 830); *Tibbs* v. *Atlanta*, 125 *Ga.* 18 (53 S. E. 811). By a divided bench this question was very thoroughly dealt with in both the majority and minority opinions in *Southeastern Greyhound Lines* v. *Ga. Pub. Serv. Com.*, 181 *Ga.* 75 (181 S. E. 834, 102 A. L. R. 517). This court, in *Beavers* v. *Inman*, 35 *Ga. App.* 404, 411 (133 S. E. 275), where a similar question was presented, held that certiorari would lie to re-

view the judgment of the police committee: "Even 'where a municipal council had the right to remove a policeman with or without a trial, but proceeded under the latter method, their judgment of removal could be reviewed on certiorari.' *City of Atlanta* v. *Blackman Health Resort,* 153 *Ga.* 499, 509 (113 S. E. 545), citing *Asbell* v. *Brunswick,* 80 *Ga.* 503 (5 S. E. 500)." See also *Beavers* v. *Armistead,* 156 *Ga.* 833 (4-a) (120 S. E. 526). So we hold that, to review the rulings on the subject-matter of the instant case, certiorari would lie.

■ The city contends that the petition for the writ of certiorari was fatally defective for it failed to bring up the ordinance or specification of the rules for the violation of which the defendant was tried. This contention is based on the well-recognized principle that the superior court is without authority to take judicial notice of municipal ordinances, and that such ordinances must be specially pleaded. To support this position the city cites *Hill* v. *Atlanta,* 125 *Ga.* 697 (2) (54 S. E. 354, 5 Ann. Cas. 614); *Nobles* v. *Savannah,* 39 *Ga. App.* 814 (148 S. E. 612); *Porter* v. *Thomasville,* 16 *Ga. App.* 313 (85 S. E. 283); *Wright* v. *Atlanta,* 61 *Ga. App.* 650 (7 S. E. 2d, 215). After a careful consideration of those cases and citations therein, we do not think the position of the city is tenable under the record of the case before us. In *Hill* v. *Atlanta,* supra, Judge Cobb, speaking for the court, said: "When a petition for certiorari, complaining of a conviction in a municipal court, sets forth the charge against the petitioner, it may be assumed that the act embraced therein has been made the subject of a valid ordinance. . . *But the rule is otherwise* when the petition avers *merely* that the accused was arraigned for the violation of a given section of the City Code, or of an ordinance passed in a certain year, when there is nothing in the petition to indicate what were the provisions of the section of the City Code or the ordinance." (Italics ours.) The court cited *Carr* v. *Conyers,* 84 *Ga.* 287, 289 (10 S. E. 630, 20 Am. St. R. 357); *Chambers* v. *Barnesville,* 89 *Ga.* 739 (15 S. E. 634). These authorities are to the effect that where the charges are detailed and particularized, as in the instant case, a valid ordinance will be assumed. The records of the other cases cited by the city show that there were no detailed charges set out in the petition, no ordinance set forth, and no denial of the existence of an ordinance. So, such a lack of allegations in the petition

brings a case under the ruling which Judge Cobb designates as "But the rule is otherwise, when, etc." The writ was not subject to be dismissed for this reason. In effect the defendant admitted the existence of a valid ordinance covering the specific charges detailed against him, and since the charges were so detailed, the court will assume the validity and existence of an ordinance sufficient to embrace such detailed charges. It is not as to the existence of the ordinance or the sufficiency of the specification of charges that the defendant complains. But his complaint is as to the illegality of his arraignment, and the illegality of the methods of his trial and conviction. He claims that the errors which he specifies in his petition were so irregular and harmful as to invade his inherent rights and entitle him to have the final judgment set aside. Hence, we will inquire into his complaints.

■ This brings us to the proposition in which the defendant complains that an assistant city attorney appeared at his trial and took part in questioning the witnesses for both parties, which participation the defendant claims was prohibited by a section of the City Code, unless the attorney had been instructed to do so by the mayor and general council. It nowhere appears in the petition that the mayor and general council did not instruct the assistant attorney to participate in the proceedings against the defendant. There was no timely objection made before conviction. There is no merit in this contention.

■ The defendant also contends that a member of the police commission received the complaint against him from one of the alleged victims, and directed and instructed a police officer to make the investigation; that the officer, acting under the instructions of the commissioner, made the investigation and was instrumental in procuring the evidence. He contends that the commissioner usurped the duty and authority of the chief of police in violation of an ordinance which prohibits such conduct on the part of a commissioner. It appears from the record that the chief of police preferred and approved the charges in writing on which the accused was tried and convicted. "It is the general rule that the manner in which an accused is brought before a court does not impair its jurisdiction to try him." *Joiner* v. *State*, 66 *Ga. App.* 106 (17 S. E. 2d, 101) and cit. We think the principle there discussed and applied prevails here. There is no merit in this contention.

■ The defendant complains that after the case was closed as to evidence and argument the commission went into executive session, excluding the defendant and his attorney, while retaining the city attorney and others. It does not appear that the defendant registered any protest or objection before the commission at the time he was excluded and the others were permitted to remain, and before the findings of the commission were published; and it does not appear that the defendant and his counsel had no knowledge of such conduct before the findings were published. The law does not permit the defendant to take his chances on irregularities of which he has knowledge, without protest, and after conviction urge them as harmful. This ground is without merit.

■ The defendant complains that he objected to the admission of certain evidence. This evidence was to the effect that numerous approaches and threats were made to the alleged victims who made the affidavits which were the basis of the charges. These threats were testified to have been made while the case was pending and before the trial. They were not made in the presence of the defendant. There was no evidence at all to connect the defendant with such conduct. The witnesses who testified to such were unable to identify any of the parties engaged in such wrongdoing. The defendant entered timely and lawful objections to the introduction of such testimony. The objections were ignored by the trial body. Some of the members of the committee participated in the questioning which brought out the incompetent testimony. The defendant made a motion to exclude the testimony. This motion was likewise ignored. Where proper objections, as in this case, are made to the admission of illegal testimony and the tribunal makes no ruling, the failure to rule is equivalent to overruling the objections. *Lynn* v. *State,* 140 *Ga.* 387 (8) (79 S. E. 29); *Heinz* v. *Backus,* 34 *Ga. App.* 203 (2-b) (128 S. E. 915). But we are confronted with a more difficult question. Granting that the testimony admitted was illegal, under the facts of this case, does this demand a reversal of the case? In our original opinion we thought so. On rehearing and further investigation we think not. It was held in *Tibbs* v. *Atlanta,* supra: "The board, as organized for the purpose of trial, if not technically a court, was certainly about to proceed in the exercise of judicial functions. Its members partook both of the nature of judges and jurors. They were to decide both

the law and the facts of the case under consideration. While they had imposed upon them the duties usually required of jurors, they acted more in the nature of judges than jurors. That is, they were judges authorized by law to pass upon questions of fact. They are to be dealt with, therefore, under the rules controlling the powers, duties, and conduct of judges."

As to the effect of the admission of illegal testimony, and the authority of the reviewing court to reverse a judgment of the inferior court for admission of it, a different rule is recognized in trials before quasi-judicial tribunals or court trials without a jury, and in jury trials. 5 C. J. S. 136 states: "In an equitable or other case tried by the court without a jury the appellate court considers only relevant, material, and competent evidence and disregards all other evidence, whether objected to or not."

There is a long line of decisions by our Supreme Court holding that in interlocutory hearings in equity, the admission of illegal testimony will not void the judgment. It is true that this principle seems to be based on the ground that the judgment is not final. But it must be conceded that the granting of injunctive relief and the appointment of receivers, etc., are of grave concern, yet the rule is that the judgment will not be reversed because of the admission of illegal testimony, if there be legal evidence to sustain it.

In *Southern Cotton-Oil Company* v. *Overby*, 136 *Ga.* 69 (70 S. E. 664), Judge Lumpkin, speaking for the court, used the following language: "If the evidence erroneously admitted or rejected was of vital or controlling character, or the ruling such that injustice probably arose from it, such erroneous ruling would furnish strong reason for a reversal. But not every error in rulings as to evidence on such a hearing will demand a rehearing. Of course we do not mean that judges have free license to admit illegal evidence on such hearings, and to make rulings vitally affecting rights of parties, in the use of discretion resting on evidence of that character."

The Supreme Court in *Savannah River Terminals Co.* v. *Southern Railway. Co.*, 148 *Ga.* 180, 187 (96 S. E. 257), Judge George rendering the opinion, said: "Some of the evidence considered by the judge upon the interlocutory hearing was objected to as mere conclusions of the witnesses, and conclusions upon the very question to be decided by the court. These witnesses, while qualifying as

experts, nevertheless gave the grounds upon which the conclusions were based. Opinion evidence, though erroneously admitted on an interlocutory hearing for injunction, will not necessarily require a reversal, if there be legal evidence in the record sufficient to sustain the judgment rendered. *Southern Cotton-Oil Co.* v. *Overby,* 136 *Ga.* 69 (70 S. E. 664). This rule, however, is to be cautiously applied. Some of the evidence in the present record was objectionable upon the grounds stated; but we do not feel authorized, under all the facts in the record, to reverse the judgment on that account."

The most recent pronouncement of our Supreme Court on this principle, in which the court cited approvingly *Southern Cotton-Oil Co.* v. *Overby,* supra, is in *Willingham* v. *Willingham,* 192 *Ga.* 405, 408 (15 S. E. 2d, 514), where the custody of children was involved, and the parties litigant were excluded from the trial. Chief Justice Reid rendering the opinion, with all the justices concurring, used the following language: "Nevertheless in a proceeding of the present character, determinable by the judge without the intervention of a jury, where the principal consideration is for the present and future welfare of the children, and which is not to be strictly governed by rules applicable in ordinary trials (cf. *Southern Cotton Oil Co.* v. *Overby* [supra]), we do not think that it was beyond the discretion of the judge to exclude both parties from the court-room while the children were testifying, where the attorneys representing the parties were allowed to remain, with the privilege of examining them. We can not see how this could possibly have operated to the injury of either party."

Then too, there is a long line of decisions of our Supreme Court and of this court which announce the principle that even in jury trials admission of illegal testimony will not always demand a reversal of a judgment based upon a verdict. It is true that since this principle was announced in the first volume of the Georgia Reports, *Stephens* v. *Crawford,* 1 *Ga.* 574, 580 (44 Am. D. 680), some of our decisions seem to confine the principle to these cases where the evidence demands the verdict rendered. But when the principle was so clearly announced in the *Stephens* case, supra, the court used this language: "It is well settled that a new trial will not be awarded because illegal testimony was admitted, if, wholly irrespec-

tive of that testimony, there was plainly and obviously evidence sufficient to justify the finding."

A court for the correction of errors, we hold, has, in relation to this matter, as ample, if not greater, discretion than the circuit court has upon an application for a new trial. It will, to use the language of the Supreme Court of New York, look beyond the letter of the error assigned, and inquire how far that error affected the judgment of the court or the finding of the jury. 9 Cowen, 680. We have no doubt that the discretion now claimed belongs to all corrective tribunals. It is expedient, as preventing delay and cost in the administration of justice, that this court should be clothed with such power. It has exercised that discretion already. See *Arrington* v. *Cherry,* 10 *Ga.* 429, 435; *Murphy* v. *Justices of the Inferior Court,* 11 *Ga.* 331; 9 Michie's Enc. 695-698, as to evidence illegally excluded or admitted; also *Birdsong* v. *Woodward,* 57 *Ga.* 354. It is interesting to note what the court has said as to the admission of illegal testimony or errors in the charge of the court to the effect that the judgment should not be set aside merely because of errors committed.

In *Hagar* v. *State,* 71 *Ga.* 164, 167, the court cited the *Stephens* case, supra, and a number of other cases of the Supreme Court, and used this language: "The evidence is overwhelming that the defendant is guilty, and where such is the case, even errors in the admission or rejection of testimony, or in the charge of the court, will not operate so as to require a new trial." In *Beck* v. *State,* 57 *Ga.* 351 (2), Judge Bleckley rendering the opinion, said: "Even in a case of capital punishment, the verdict may be left to stand though some competent evidence was excluded on the trial, if it be perfectly clear, beyond all doubt, that the conviction and punishment would be no less rightful with the excluded evidence in than with it out. 14 Georgia Reports 43; 35 Ibid., 303." In *Green* v. *State,* 154 *Ga.* 117, 134 (113 S. E. 536), we find: "Where guilt is clearly established slight error in the exclusion of evidence does not require the grant of a new trial." In *Manley* v. *State,* 166 *Ga.* 563, 584 (144 S. E. 170), in the sixth division of the opinion, the court cited a number of decisions approving the principle here under discussion. We think that, on the authorities cited, we may be well assured of the principle that the admission of illegal testimony, even in jury trials, does not ipso facto demand a reversal.

Since we have determined, and so hold, that the trial in the instant case was judicial, as determined by *Tibbs* v. *Atlanta,* supra, and that the police committee was acting more in a judicial capacity than as a fact-finding body, we must apply to them the rules which govern a trial without a jury. In this respect, in *Ward* v. *State,* 26 *Ga. App.* 61 (105 S. E. 373), this court held: "It is not necessary that there shall be the same strictness as to the admission of evidence when a case is by agreement tried by the judge without a jury as when it is tried by a jury, since the judge is supposed to know the rules of evidence and to be able to apply them in the final determination of the case." While it does not appear that any member of the commission was learned in the law, yet at the same time they were acting in such a capacity as to be responsible as any judicial officer, and it is not for this court to decide the extent of their knowledge or capacity to so act. As we view it, we are to apply the rules to all judicial tribunals alike, and if any particular tribunal is for any reason not trained, that is a matter for the legislative branch of the Government, and not for this court, to decide.

In the instant case the legal evidence for the City of Atlanta, while it may not be termed as overwhelming and sufficient to demand a finding in favor of the city, yet it was ample and abundantly sufficient to authorize the finding. The objectionable evidence pertained to an incident which happened long after the misconduct for which the officer was tried. We can not say, applying the rule most cautiously, as a matter of law, that the admission of the illegal testimony, under the facts of this case, demands a reversal. In this connection it is interesting to note the discussion that has arisen in recent years with reference to the rules of procedure applicable to administrative tribunals or bodies. Wigmore on Evidence (2d ed.), 28 says: "The . . technical view is that the jury-trial system of rules is the only safe method of investigation where liberty and property may be at stake; that the sound wisdom of caution which is the basis of that system is as valid for one tribunal as for another; and that the judicial review of administrative officers' findings would be impracticable and ineffective without using that system as a standard for checking the regularity of the proceedings. There is no need to quote representatives of this view; it preaches or lurks in almost every judicial opinion; and it echoes instantly in the breast of the orthodox legal practitioner." And the same authority states

another view: "The popular view, it may be called—is that the jury-trial rules have had their day in our system of justice; that their obstructive and irrational technicalities have made the system nauseous and futile in its native habitat; and that to transplant it to new fields would be an error amounting to a folly." Dickinson on Administrative Justice and Supremacy of Law, 35, says: "Administrative tribunals are not bound by the procedural safeguards which mold the outcome of an action at law; more specifically, they are, in the first place, not bound by the common-law rules of evidence." Henderson on Federal Trade Commission, 64, with respect to the Federal Trade Commission, has this to say: "So far as I have been able to find, the commission itself has never refused to give effect to testimony on the ground that it is technically incompetent; nor have questions of the law of evidence played any part in the cases on appeal. As has been pointed out, the rules of evidence grew out of the practical exigencies of jury trials and are probably superfluous in administrative proceedings."

We find in Stephens on Administrative Tribunal and the Rules of Evidence, 5, this statement: "The subject is of interest from the standpoint of the science of law. It is important to both society and the individual that the orders of all tribunals have a foundation in fact. If the orthodox lawyer's view that only through the use of the rules of evidence can we dependably find the facts as correct, then following the popular view and abandoning the use of these safeguards to the truth is perhaps greater individualization of the administration of justice than even the most spirited protagonists of commissions would endorse. For already the administrative official has been freed from the restraints of the more rigid rules of substantive law and left much to his own discretion in the application of wide standards of reasonableness and adequacy and fairness. But now he is, by the realization or abandonment of the rules of evidence, to be 'heart whole and fancy free' as to the facts. The 'hunch' as the basis of decision will indeed have been canonized. But if the popular view is correct and the rules of evidence are but 'obstructive and irrational technicalities' then we are well rid of them. Perhaps the truth lies part way between."

Along the same line the United States Supreme Court in Interstate Commerce Commission v. Baird, 194 U. S. 25 (24 Sup. Ct. 563, 48 L. ed. 860), made this statement: "The inquiry of a board

of the character of the Interstate Commerce Commission should not be too narrowly constrained by technical rules as to the admissibility of proof. Its function is largely one of investigation and it should not be hampered in making inquiry pertaining to interstate commerce by those narrow rules which prevail in trials of common law where a strict correspondence is required between allegation and proof."

We call attention also to United States *v.* Abilene &c. R. Co., 265 U. S. 274 (44 Sup. Ct. 565, 68 L. ed. 1016), where the following statement is made: "The mere admission by an administrative tribunal of matter, which under the rules of evidence applicable to judicial proceedings would be deemed incompetent, does not invalidate its order." However, in the same opinion the court states; "But a finding without evidence is beyond the power of the commission." Mr. Justice Brandeis, speaking for the United States Supreme Court in Western Paper Makers Chemical Co. *v.* United States, 271 U. S. 268 (46 Sup. Ct. 500, 70 L. ed. 941), said: "These objections we have no occasion to discuss. . . In making its determinations the commission is not hampered by mechanical rules governing the weight or effect of evidence. The mere admission of matter which under the rules of evidence applicable to judicial proceedings would be deemed incompetent does not invalidate its order."

While these authorities, other than those of our own State, are cited here only as historical and as persuasive authority, as such they do, we think, sustain the construction which we have placed on the decisions of our own State and illustrate the applicability of that construction to the facts in the instant case.

For these reasons, on rehearing, we hold that the judgment of the lower court should be affirmed. The original opinion of this court rendered on January 14, 1942, is hereby withdrawn and vacated, and this decision is substituted in lieu thereof and made the judgment of this court.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*