30163. MILLER *v.* THE STATE.

Decided September 10, 1943.

*Reuben A. Garland,* for plaintiff in error. *John A. Boykin, solicitor-general, E. E. Andrews, Durwood T. Pye,* contra.

GARDNER, J. The defendant was convicted on each of the five counts of the indictment. His motion for new trial on the general grounds, and on six special grounds, was overruled, and he excepted.

Counsel for the defendant in his brief confines his argument as follows: "1. If the evidence in a criminal case is entirely circumstantial as to possession and sale of liquor, and proof of delivery depends upon circumstantial evidence, and proof of possession depends upon circumstantial evidence, and there is direct evidence of the presence of another person (Hailey) together with the defendant at the place where the sale is circumstantially proved, does not the law require an instruction from the court to the jury on the

law of circumstantial evidence; and is this not particularly true where evidence of other violations is admitted, which violations are proved to have been committed by persons other than the defendant outside the defendant's presence and hearing, and at a place remote from the place where he is accused of having violated the liquor control act? 2. Where evidence is admitted of other violations of the statute, for the purpose of illustrating motive, intent, etc., on the part of the defendant; does not the law restrict such evidence to the *acts of the defendant,* and is it not manifestly unfair to allow the sayings, doings, and acts of third parties to be admitted as evidence against the accused, when the accused is not present; and is not this particular evidence in the case at bar entirely and totally circumstantial evidence; and where admitted, was not the defendant entitled to have the court instruct the jury on the law of circumstantial evidence? 3. Was it not error for the court to admit the testimony tending to show that parties other than the defendant on trial were guilty of misdemeanors similar to those with which defendant was charged, when the alleged misdemeanors, if committed at all, were committed out of the presence and hearing of the defendant on trial? And if such testimony, tending to show that parties other than the defendant on trial committed misdemenors similar to those charged against the defendant on trial, *was* admitted, was it not error for the court to fail to charge the jury on the law of circumstantial evidence?" Therefore we treat all other contentions as abandoned, and confine ourselves to a discussion of the case as thus restricted and circumscribed by counsel for the defendant.

The substantial allegations of the indictment are: Count 1 charged a sale of two cases of whisky to David Ayers on May 8, 1942, from a two-story house known as 255 East Pace's Ferry Road, the defendant having no license to sell liquor in said building. Count 2 charged a sale of one case of whisky to David Ayers on May 10, 1942, from the same house, the defendant having no license to sell liquor in said building. Count 3 charged a sale of whisky to David Ayers on Sunday, May 10, 1942. Count 4 charged that on May 8, 1942, the defendant did sell liquor at wholesale without a license, in that he did then sell two cases of whisky to David Ayers. Count 5 charged that the defendant sold more than two quarts of whisky in a single day to David Ayers, in that he

sold Ayers twenty-four pints (one case) on May 10, 1942. It will be observed that two transactions are involved in the indictment, one on May 8, 1942 (dealth with in counts 1 and 4); the other on May 10 (dealt with in counts 2, 3, and 5). As to the transaction of May 8, it appears that David Ayers went to the home of the defendant, who resided in a two-story house known as 255 East Pace's Ferry Road, in Fulton County. There, he obtained two cases of whisky and paid the defendant $45.60. No license was posted at that place. L. H. Crawford, a State revenue agent, accompanied Ayers to within fifty or seventy-five yards of the house, and Ayers alone entered the house, where he found Miller. Ayers testified: "I went there in my automobile. I took the two cases of whisky away from there in my automobile. I got the whisky from Mr. Miller's home. As to what part of the home it was in, well, I was in his office and told him what I wanted, and he told me that he would load the car, and I paid him $45.60, and he came back in the room and said my car was loaded, the whisky was on it. The whisky was put in my car. The whisky was in the house. I did not see him when he carried it out of the house. I said something to him about making some subsequent purchases. I told him that I would buy some whisky later, and that I would come back; and he told me to come back any time, that he would have plenty of whisky."

The clerk of the county commissioners testified that the defendant did not have a wholesale liquor license for Fulton County. The evidence further revealed that the defendant did not have any kind of license to sell liquor from his residence. L. H. Crawford, testified, that on May 8 he gave Ayers the money with which to purchase the two cases of whisky, and told him to go buy the whisky and get a receipt; that Ayers went in the house; that the witness saw the whisky being put in the car, but he could not name the person who put it in the car, because the car was between him and those who put the whisky in the car. When Ayers came back to Crawford the two cases of whisky were in the car, and Ayers handed Crawford a purported receipt identified as State's Exhibit 5.

It is contended by the plaintiff in error that the sale of May 8 was dependent entirely upon circumstantial evidence, and that the court erred in not charging to the jury this rule of law as it is set out in the Code, § 38-109. A failure to charge on the law of cir-

cumstantial evidence, which would require a reversal, is where the transaction is dependent entirely upon circumstantial evidence. *Maddox* v. *State,* 64 *Ga. App.* 285 (13 S. E. 2d, 37). We can not agree with able counsel that the transaction of May 8, viewed in the light of the evidence supporting it as related above, is wholly circumstantial. In support of his contentions counsel cites *Allen* v. *State,* 14 *Ga. App.* 115 (80 S. E. 215), which involved a sale of whisky, and where it was shown only that the alleged seller delivered certain whisky to the alleged purchaser. This court held that there was no issue as to the possession and delivery of the whisky to the alleged purchaser, and that the only question was whether the transaction involved the elements of a sale. That question was dependent wholly upon circumstantial evidence. The points in the case at bar are quite different. The purchaser (Ayers) testified that he approached the defendant for the purpose of purchasing two cases of whisky; that a price was agreed upon; that he paid the defendant for the whisky; that the defendant left the room, and in a short time returned and informed the witness that the whisky was loaded on the witness's car; and both Ayers and Crawford testified that the whisky was found in the car immediately thereafter. Thus the proof of the elements of sale in the instant case was, if not wholly direct, more direct than circumstantial. The court did not err, without a written request, in omitting to charge on the law of circumstantial evidence as applied to counts 1 and 4.

■ As to counts 2, 3, and 5, dealing with the transaction of May 10, the evidence, in addition to that set forth above (which is also pertinent to the grounds now under discussion), reveals that Ayers went back to the same house on Sunday, May 10; and as to this occasion he testified: "It was about eleven o'clock in the morning on May 10, 1942, when I went back there. On Sunday morning Mr. L. H. Crawford and myself met Mr. Heard and Mr. Hay and Mr. Gilbert, county officers in Fulton County, and later me and Mr. Crawford drove to the home of Miller, and Mr. Crawford got off at the same place, at the back of his home, and I drove on around to the front of his home and went into the house and told Mr. Miller that I was back on Sunday and needed some more liquor; and he asked me how much did I want, and I told him I wanted a case, and he asked me where my car was, and I told him it was

parked kind of at the front, and he asked me for my keys. So I gave him my keys, and he went out and took the keys out and came back in about ten minutes later, and he told me my car was loaded. As to whether I bought any whisky from him at that time at 255 East Pace's Ferry Road, I paid him $22.80, and he came back in and said my car was loaded and ready to go. That was rye whisky that I bought at that time, one case. It was a case of pints of whisky. There were twenty-four pints in the case. I was in Fulton County at the time I made both of these purchases at 255 East Pace's Ferry Road. I made a search for a license there at that time, to see whether he had a license or not. He did not have any license to sell whisky there at that place. As to whether I made any search to determine whether or not he had any whisky there in that house on the 10th when I bought the whisky, I went back and picked Mr. Crawford up and met the county officers, Mr. Hay, Mr. Heard, and Mr. Gilbert, and came back to the house and got somewhere around 600 cases of whisky. That was at that same house. There was whisky in two or three rooms downstairs and whisky in about three rooms upstairs. I do not recall the brand of the rye whisky that I got there. As to whether the three cases of whisky which you show me are the three cases that I bought there on those two occasions, well, the whisky was at the warehouse. I can't say for sure, but I am sure that is the liquor. Mr. Crawford and myself carried the whisky to the Georgia State liquor warehouse, and it was stored at the State liquor warehouse. I didn't examine it. Mr. Crawford examined it. He sold me two cases on the 8th, and one case on the 10th."

L. H. Crawford testified: "During the month of May, 1942, I was with the State Revenue Department in the Alcoholic Tax Unit. I know the defendant on trial, Burt R. Miller. I saw Mr. Miller on May 10, 1942. I met Mr. Heard and two county policemen, together with Mr. Ayers, Sunday morning at ten o'clock, back of the E. Rivers School on Peachtree Road. Mr. Ayers and myself left those gentlemen and drove to Mr. Miller's place on East Pace's Ferry Road. I got out just before I got to the house. Mr. Ayers drove in around the house, and I went over to Tidwell's, which is practically, I would say approximately, one hundred yards to the back of his house. I saw Mr. Ayers drive in, get out of his car, go around the house; and I imagine in fifteen minutes, ten or fifteen

minutes, Mr. Miller came out. He looked the car over, and I couldn't tell from where I was standing whether he put the case of whisky in the car. I watched the car, though, until Mr. Ayers came out. I saw him get in the car, drive right on down, and I met him just after he got out of the drive of Mr. Miller's place, and he had this case of whisky. He had it in the back seat of the car down on the floor of the car. I got in the car, and Mr. Heard and these other gentlemen went right into the place. When I went in, Mr. Miller spoke to me and said, 'Louis, what are you doing out here?' I said, 'Well, Burt, you just sold a case of liquor to the wrong man.' In a moment he said, 'I didn't sell any liquor.' I said, 'Well, Burt, I wouldn't have sent the man in here without marked money. Now, just stand up, and I am going to see whether you got the money or not.' He said, 'Well, I will admit I got the money, but I didn't sell him the liquor.' I did not have any marked money. I said, 'Burt, you ought to know that I wouldn't send a man in here to buy the whisky if I hadn't already marked the money. Now just stand up, and I am going to see whether you got it or not,' and he gave me this answer, 'I will admit I got the money,' and Mr. Miller admitted afterwards to me this way, he said, 'You know, it is the first time I ever sold a case of whisky on Sunday, and to think that I would get caught on it. It is the first time I ever sold a case on Sunday.' I can identify these three cases of whisky. They were marked. That is the case [indicating] that was bought on Sunday, because I put that on there myself. That is Cummins bourbon liquor. I know something about these other two cases. I was at the same place Friday afternoon. I left Mr. Ayers in the same place, and Mr. Ayers went in there and got those two cases of whisky over there [indicating]. That is one of them. [Indicating]. There is one case of rye and one case of bourbon. This is supposed to be bourbon, and has the same mark on it. This is the bourbon, and that is the same. I labeled both of them. They are both Cummins. When I went in there on May 10, I searched the place. I found six or seven hundred cases of whisky. He did not have any license in that building to sell whisky, retail, wholesale, or otherwise. We found between six and seven hundred cases of whisky. That whisky was all over the house, and I think there were three rooms that had locks on them. This is a two-story frame house. It is a dwelling-house. I couldn't tell you whether

he lived there in that house or not. There was a Mr. Stewart who claimed to work for Mr. Miller, or claimed he lived there. I would say that this house where I bought the liquor was fifty or seventy-five feet from his liquor store where he had a license to sell liquor. They had cut the bank down and built the liquor store. You had to go up a set of steps to get to the house from the liquor store. On the 8th, Mr. Ayers went in and bought this whisky and came out. I told him when he went in there to get a bill for it. I gave Mr. Ayers the money. I told him, 'Now, get a bill for this whisky.' He comes back and that is the card that he got, just the amount, the price of the two cases. Well, I took that and when I went in there Sunday morning I found on Mr. Miller's desk this pad [State's exhibit 5], which naturally that slip came off of. That pad was on his desk. That pad [State's exhibit 5] is the same size of defendant's exhibit A. On May 8 I stayed at the same place where I was on Sunday, at this Tidwell's barbecue stand, and on that occasion I saw the two cases of whisky brought out and put in the car. I don't know who brought them out and put them in there. I couldn't tell who they were. They were on the other side of the car."

To our minds, clearly the alleged sale of May 10, which involves counts 2, 3, and 5 of the indictment, was not dependent entirely upon circumstantial evidence. We not only have the direct testimony of Ayers, the alleged purchaser, but also a confession of the defendant to Crawford that he made this sale of May 10, contending it to be his first sale on Sunday. What we have said and the authorities cited as to counts 1 and 4 are applicable to the question at issue regarding the counts now under consideration. The court did not err in omitting to charge on circumstantial evidence.

■ Error is assigned because the court admitted in evidence, over objection, testimony to the effect that at least two sales of liquor were made (some on Sunday) from a filling-station owned by the defendant. The filling-station was located near his residence and near a retail liquor store owned by him, also located adjacent to or near his residence. These two sales of one pint each were made by the defendant's employees at a time when he was not present. In the filling-station behind the tire rack was constructed a "trap" with a door which was locked. On the door in the handwriting of the defendant was a list of different brands of liquor, with the price

opposite each brand. After the filling-station was raided (a few days after the transactions above stated) ninety-seven pints of whisky were found, about half within the trap and half in cases by the side of the trap. The officers desired to make pictures of the place, but did not have a court order, and the defendant refused to permit pictures to be made. During a colloquy with the officers the defendant stated: "I don't like this whole damn thing anyhow. I have furnished a place here for the county police, heat, telephone, and radio, and various other things, and taken care of them. Then you come in here and pull me." The officer said: "Yes, come in here and pull you. You haven't any more right to sell whisky illegally than anybody else." The accused said, "Well, I am fed up on the whole damn thing."

The contention of the State is that the purpose of the evidence of the sales by the defendant's employees at the filling-station was to show the intent and bent of the defendant's mind to violate the prohibition law. The transactions took place within about one hundred yards of the defendant's retail liquor store and his residence, and occurred within a month after the transactions specified in the indictment. The court charged the jury that the sales from the filling-station could not be considered by the jury for any purpose save to illustrate the bent of the defendant's mind and intent regarding the charges specified in the indictment. It is contended by the plaintiff in error, that the connection of the defendant with the sales at the filling-station was wholly circumstantial; that if such evidence was admissible against him, the court should have given in charge to the jury the law of circumstantial evidence as to these sales from the filling-station; that in view of proof of these sales being based entirely on circumstantial evidence, and the evidence as to the charges in the indictment being based, at least partly, on circumstantial evidence, the jury became confused, to the prejudice of the defendant. In the brief for the plaintiff in error, under "the questions for discussion," paragraphs 2 and 3 are directed exclusively to this phase of the case. As to this point, it appears from the evidence, first, that the price-list on the trap-door was in the handwriting of the defendant; second, that this was the place of business of the defendant; and third, that the statement of the defendant, "I have furnished a place for the county police, heat, telephone, and radio, and various other things, and taken care

of them; then you come in here and pull me," is at least an admission, if not a plenary confession, that the defendant was directly connected with these illegal sales by his employees. The law is that all who are connected, directly or indirectly, with the commission of a misdemeanor are principals. However, these sales by defendant's employees pertain to a collateral issue, the main issue being the transactions specified in the indictment. Thus it may be conceded, without so deciding, that if the court did err in not giving in charge the law of circumstantial evidence, such error would not demand a reversal. The record as to the transactions specified in the indictment, save as to the statement of the defendant, bears evidence which overwhelmingly points to his guilt. Where the guilt of the accused is clearly established aliunde the error complained of, an error in the admission of testimony or in the charge of the court fades into immateriality, and does not demand a reversal. This principle was laid down in *Hagar* v. *State*, 71 *Ga.* 164, in these words: "The evidence is overwhelming that the defendant is guilty; and where such is the case, even errors in the admission or rejection of testimony, or in the charge of the court, will not operate so as to require a new trial," citing a number of similar cases. That decision was followed in *Luby* v. *State*, 102 *Ga.* 633, 648 (29 S. E. 494); *Pascal* v. *State*, 77 *Ga.* 596 (3 S. E. 2); *Perry* v. *State*, 102 *Ga.* 365 (30 S. E. 903); *Lanier* v. *State*, 106 *Ga.* 368 (32 S. E. 335). A case more directly in point is *Toler* v. *State*, 107 *Ga.* 682 (33 S. E. 629), where it was said: "While the failure of the court upon a criminal trial, in which the evidence against the accused is entirely circumstantial, to instruct the jury concerning the rule applicable to evidence of this character would, in a close or doubtful case, be cause for a new trial, such failure will not require another trial when the guilt of the accused is clearly and convincingly proved, and the charge as to the amount and character of proof requisite to a lawful conviction is such as to leave no room for doubt that the verdict would have been the same even if the court had in terms stated to the jury that, in order to warrant a verdict of guilty, the evidence must not only be consistent with the guilt of the accused, but inconsistent with every other reasonable hypothesis." See *Heath* v. *Atlanta*, 67 *Ga. App.* 85 (19 S. E. 2d, 746).

The defendant made a lengthy detailed statement in which

he denied having violated the prohibition law in any particular, and charged a "political frame-up" against him. The State countered with proof of his general bad character. The jury did not see fit to believe the defendant, as was their province. The trial court approved the verdict, and no reason is assigned why it should be reversed.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*