Brieswick *et al. vs.* The Mayor, etc., of Brunswick.

---

ROBERT BRIESWICK *et al.*, plaintiffs in error, *vs.* THE MAYOR AND CITY COUNCIL OF THE CITY OF BRUNSWICK, defendant in error.

1. The power to punish offenders against its ordinances by fine or imprisonment, conferred upon a municipal corporation, does not include the authority to coerce the payment of a fine by imprisonment.
2. Where the title to an act is "to consolidate and amend the several acts incorporating the city of Brunswick, and for other purposes therein mentioned," and it contains a provision to make valid and confirm "all the ordinances of the Mayor and City Council of the city of Brunswick heretofore passed, and not in conflict with the constitution of the state of Georgia or of the United States:"

*Held*, that it was just such legislation as this which the constitution intended to prohibit, when it excluded more than one subject matter from being embraced in the same law.

Municipal corporations. Fines. Constitutional law. *Habeas corpus.* Before Judge HARRIS. Glynn Superior Court. May Term, 1873.

For the facts of this case, see the decision.

W. WILLIAMS; R. L. JOICE; M. L. MERSHON, by brief, for plaintiffs in error.

S. C. DEBRUHL, by S. D. MCCONNELL, for defendant.

WARNER, Chief Justice.

It appears from the record and bill of exceptions in this case, that Robert Brieswick and Cyrus Shelton, two boys un-

der fourteen years of age, were imprisoned in the guard-house of the city of Brunswick; that they were brought before the judge of the superior court on a writ of *habeas corpus*, on the allegation in their petition therefor, that their imprisonment was illegal. The court, after examining into the cause of their capture and detention, on the return of the *habeas corpus*, discharged them from the custody of the officer who had them in charge. They were again arrested and imprisoned in the guard-house of said city, and again brought before the judge of the superior court on a second writ of *habeas corpus*, on the return of which it appeared by the answer of the guard-house keeper, that he detained them in custody by virtue of a warrant of commitment issued by the mayor of said city, dated the 4th of June, 1873; the order of discharge for the same alleged offense being dated 23d of May, 1873. The warrant of commitment recited that the defendants had been found guilty on the 23d day of May, 1873, of violating an ordinance of the city "to prevent persons from indecently exposing themselves or others," and sentenced to pay a fine of $5 00, or in default thereof to be confined in the guard-house ten days, and each having failed and refused to pay said fine, respectively; and whereas, the said Shelton and Brieswick have been confined by you in said guard-house for the space of three days; these are therefore to command you to secure the bodies of the said Shelton and Brieswick and keep them, and each of them, in the guard-house seven days from the date of their reception. There does not appear to have been any warrant issued for their arrest, founded on the affidavit of any person, but simply a notice served upon them, signed by the city marshal, requiring them to appear before the police court, stating that they were charged with the offense of "bathing at a wharf known as the Cotton Press." On hearing the second *habeas corpus* the court refused to discharge them, and remanded them to be imprisoned; whereupon the defendants excepted. In view of the facts disclosed by the record in this case, it may well be doubted whether the two boys who were arrested and imprisoned, were not deprived of

their liberty without due process of law : See Code, sections
4714, 4715, 4723, 4724, 4725.   There was no affidavit made
by any person charging them with having violated any ordi-
nance of the city prior to their arrest and detention.   They
were simply notified to appear before the police court as be-
ing charged with "bathing at the wharf known as the Cotton
Press."   They were charged with and imprisoned, for hav-
ing committed the offense jointly, whereas, the offense was not
joint, but several as to each one of them.   The warrant of
commitment recites that they were found guilty of violating
an ordinance of the city "to prevent persons from indecently
exposing themselves or others."   The first section of the ordi-
nance of the city, number eighty-five, prohibits any person
from *wilfully* making any indecent or public exposure of his
or her person, or of any other person.   The second section of
said ordinance prohibits any person from swimming or bath-
ing in the river opposite the city, at any place below or south
of the mouth of the canal, between daylight in the morning
and eight o'clock in the evening, except in bath-houses, or in
bath dresses.   These two sections recognize two distinct of-
fenses, to-wit: *wilfully* making an indecent or public exposure
of the person, swimming or bathing at certain described points,
except in bath-houses or in bath dresses.   For which offense
were the two boys imprisoned?   The notice states that they
were charged with the offense of " bathing at the wharf known
as the Cotton Press."   The Mayor's warrant of commitment
recites that they were found guilty of violating the ordinance
which prohibited an indecent exposure of themselves.   The
Mayor's warrant of commitment also recites that the boys had
been found guilty of that offense, and sentenced to pay a fine of
$5 00, or, in default thereof, to be confined in the guard-house
ten days ; that appears to have been the judgment of the
court, but the Mayor further recites that as they had been
confined three days in the guard-house, they were to be im-
prisoned only seven days.   Under what judgment of any
court did the Mayor derive his authority to imprison the boys
for seven day ?   The judgment of the court under which he

pretended to act was that they should be imprisoned ten days, and that was the only judgment under which he had any pretence of authority to imprison them at all. The three days' imprisonment, for which he undertook to give them credit, was declared by the judge of the superior court to have been illegal.

1. But we place our judgment in this case on the ground that the imprisonment of the boys was illegal, because the police court of the city of Brunswick had no power or authority conferred upon it by its charter to coerce the payment of the fine imposed by imprisonment. The act of 27th August, 1872, consolidating and amending the several acts incorporating the city of Brunswick, provides, by the 38th section thereof, that the police court shall have cognizance of all offenses against the ordinances, by-laws, rules and regulations of said city, and the laws of this state touching said city, with power to inflict the proper punishment by fines, imprisonment, labor, or other penalty prescribed by such ordinances, by-laws, rules and regulations, from time to time, and to enforce the same by *mittimus*, directed to the chief marshal of the city, or any lawful constable thereof, or to the keeper of the guard-house, when necessary. The police court of the city, under its charter, had the power and authority to have inflicted punishment by imposing the fine prescribed by the ordinance for its violation, but did not have the power and authority to coerce the payment of such fine by the imprisonment of the party or parties on whom such fine was imposed. The city council have the power, under its charter, to prescribe the punishment for a violation of the ordinances of the city, either by fine or by imprisonment. When the punishment inflicted is imprisonment, that is the penalty to be enforced. When the penalty is a fine, that is the penalty to be enforced in the manner provided by law; but the charter does not confer upon the city council of Brunswick the power and authority to pass an ordinance to enforce the collection of a fine by imprisoning the party who fails to pay it until he shall do so, or for any specified number of days until he shall do so. The city council have

the power and authority to pass an ordinance inflicting the proper punishment by imprisonment for a violation of its ordinances, but have not the power and authority, under its charter, to pass an ordinance to enforce the collection of a fine by imprisonment, or to·imprison any person for·the *non-payment of a fine* imposed on him.

2. The 58th section of the act does not help the matter. By the 4th section of the 3d article, paragraph 5 of the constitution of 1868, it is declared : "Nor shall any law or ordinance pass which refers to more than one subject matter, or contains matter different from what is expressed in the ·title thereof." The only subject matter referred to in the title of the act, is "to consolidate and amend the several acts incorporating the city of Brunswick, and for other purposes therein mentioned." The other subject matter contained in the act, is to make valid and confirm "all the acts and ordinances of the Mayor and City Council of the city of Brunswick, heretofore passed, and not in conflict with the constitution of the state of Georgia or of the United States," whether these acts and ordinances had been authorized by, or were in conformity with, the laws of this state or not. The 58th section of the act, it will be perceived, introduces into the body of it a distinct and quite comprehensive subject matter, embracing all the ordinances of the city which had theretofore been passed. Did the general assembly understand when the act to consolidate and amend the several acts incorporating the city of Brunswick was passed, that the other subject matter embraced in it, of confirming and making valid all the acts and ordinances of the Mayo* and City Council of Brunswick, was also made a part of that law? Did the general assembly have before it these ordinances which were confirmed and made valid by that act? Did it know and understand what were the several provisions of these ordinances? It was just such legislation as this that the constitution intended to prohibit when it excluded more than one subject matter from being embraced in the same law. It was intended to prevent surprise, decep-

tion and fraud, by covertly inserting into the act a distinct subject matter, not referred to in the caption of the act.

Inasmuch as it appears on the face of the record that the two boys were imprisoned because they did not pay the fine of $5 00 imposed on them, respectively, their imprisonment was illegal, and the court erred in not discharging them.

Let the judgment of the court below be reversed.