45956.   CITY OF ALBANY v. KEY.

ARGUED FEBRUARY 3, 1971—DECIDED JUNE 8, 1971.

*Landau, Davis & Farkas, James V. Davis,* for appellant.

EBERHARDT, Judge. What was the authority of the recorder in the imposition of a sentence after conviction of violations of penal ordinances of the city? We have made a fairly careful and exhaustive research of the charter of the city, which appears to have been first granted in 1841. Ga. L. 1841, p. 52.[1] In § 15 of this charter provision was made for the punishment of violations of ordinances by the imposition of a fine, or imprisonment in the event of failure to pay it. There seems to have been no change in the power granted until 1858 (Ga. L. 1858, p. 128) when the Mayor of Albany was granted "the same power to punish for offenses as [is granted] to the Mayor of Columbus." At the same time the Mayor of Columbus was granted power to impose fines and to imprison if the fine were not paid, for specifically listed offenses. In 1889 (Ga. L. 1888-1889, p. 786) power was granted to impose fines, *or* to imprison, *or* to compel work on the streets or in work camps, as may be prescribed by ordinances.

A new charter was granted by Ga. L. 1899, p. 107, and by § 24 the judge of the police court was granted power "to try all offenders against the laws and ordinances of said city, and to inflict such penalties as may be prescribed therefor." Another new charter came in 1907 (Ga. L. 1907, p. 369) and by § 10 of it the power to inflict penalties was to be "as prescribed by ordinances." Another charter was granted by Ga. L. 1910, p. 316, and § 10 of this one provided that the judge of the police court should have power to impose punishment for violations of ordinances by fines, not exceeding $200, *or* by imprisonment, *or* by labor on the streets, *or* in the alternative. This continued until 1912, when

---

[1] In subsequent Acts (Ga. L. 1899, p. 124; Ga. L. 1907, p. 369; § 2; Ga. L. 1910, p. 316, § 2; Ga. L. 1917, p. 454, § 2), reference is made to a charter granted in 1838, but an examination of the printed laws of that year does not disclose it.

another charter was granted (Ga. L. 1912, p. 515), and § 10 of this charter authorized the imposition of fines, not exceeding $200, *or* imprisonment, *or* by labor on the streets, *or* in the alternative, *or* as prescribed by ordinance. Another charter came in 1917 (Ga. L. 1917, p. 454), but no change was made in this respect. The provisions remained the same. The last charter granted, so far as we have been able to determine, and under which the city now operates its government,[2] including the police court, was by Ga. L. 1923, p. 370. In § 18 of that charter it is provided that: "The board of commissioners of said city shall have power . . . to prescribe punishments for the violation of the same (ordinances of the city), in a fine not exceeding two hundred dollars ($200) *or* imprisonment in the guardhouse, city prison *or* other place provided, *or* compulsory labor on the streets or other public works *or* city chain gang, not to exceed sixty (60) days, and either one *or* both of said punishments may be prescribed, *or* the several punishments made cumulative, *or* the fine may be imposed with an alternative of said imprisonment or compulsory labor, and the fine imposed may be coerced by such imprisonment or labor. . ." Section 24 (1) of this charter provides: "Said police court shall have jurisdiction . . . to punish persons convicted in said court of violating such laws and ordinances in a fine not to exceed two hundred dollars *or* by imprisonment in the guardhouse, city prison, or other place provided, *or* by compulsory labor on the streets or other public works, *or* city chain gang not to exceed sixty (60) days, and either one *or* more of said punishments may be imposed, *or* the several punishments may be cumulative, *or* the fine may be imposed with an alternative of such imprisonment or compulsory labor or coerced or enforced by punishment or labor; . . ." (Emphasis supplied). The provisions of prior charters were, of course, repealed by the new one.

We deem the language of these provisions to make it clear that the authority to inflict or impose punishment and penalties has, since 1923, at least, included the power to impose a fine *or* impri-

[2] There have been many amendments to this, as well as former charters, but none of the amendments appear to have made changes as to this subject matter.

sonment, *or* both, *or* to impose them in the alternative, up to the prescribed limits. In this respect the recorder has acted within the provisions, and unless these provisions are, for some reason, invalid, the sentences imposed are proper.[3]

Appellee contends that these charter provisions are void because in conflict with *Code* § 69-205, which provides: "The right and power to organize work gangs or other means of confinement and to confine at labor therein, for a term not exceeding 30 days, persons convicted of violating the ordinances of incorporated towns and villages are hereby conferred on the incorporated towns and villages or their respective authorities: Provided, that said penalty shall be inflicted only as an alternative upon failure or refusal to pay fines imposed for such violations."

This Code section comes from Ga. L. 1880-81, p. 179, which reads: "An Act to confer *additional powers* on incorporated towns and villages of this State, and for other purposes.

"Section I. The General Assembly of the State of Georgia do enact, That, from and after the passage of this Act, *as additions to powers existing under present laws,* the right and power to organize work-gangs or other means of confinement, and to confine at labor therein, for a term not exceeding thirty days, persons convicted of violating the ordinances of such towns and villages, are hereby conferred on the incorporated towns and villages of this State, or their respective authorities: Provided, that said penalty shall be inflicted only as an alternative of failure or refusal to pay fines imposed for such violations.

"Section II. Be it further enacted, That all laws and parts of laws, *except local laws,* in conflict with this Act are hereby repealed.

"Approved, September 29, 1881." (Emphasis supplied).

It is to be observed that this Act had application only to *towns*

---

[3] It is not contended that appellant has been or is being confined to "work out" a fine which, because of his indigency, he is unable to pay, as was the case in Williams v. Illinois, 399 U. S. 235 (90 SC 2018, 26 LE2d 586), or that he suffers confinement because of inability to pay fines for offenses punishable by fines only, as was the case in Tate v. Short, 401 U. S. 395 (28 LE2d 130).

*and villages.* From the time of the charter granted in 1841 Albany was incorporated as a *city.* A town or village and a city were not the same (see *Spence v. Rowell,* 213 Ga. 145 (97 SE2d 350), and cases cited), until the adoption of Ga. L. 1964, p. 170, now appearing as *Code Ann.* § 69-1601, providing that the words "town," "city," and "municipality," are to be construed as synonymous wherever they may appear in the statutory laws of Georgia. We do not think the Act of 1964 (*Code Ann.* § 69-1601) operated to diminish the power of the city, for it could only do so if the Act of 1881 had that effect, and it specifically provided *additions to powers existing,* not limitations. We think, too, that a reading of the Act of 1881 clearly indicates that it was designed to permit only the providing of "work-gangs" and to afford the town or village a right to put offenders to work thereon when fines imposed were not paid. It did not deal with the matter of sentencing one to *imprisonment* only.

The Act of 1881 had been codified and was included as a part of the Code when adopted, and *Code* § 69-701, also included, provides: "The organization of the various corporate and police courts of this State, and the laws relative thereto, are undisturbed by the adoption of this Code, unless additional, concurrent, or exclusive jurisdiction, or cumulative remedies, are conferred by it upon them or other courts, or other magistracy, *and then they are altered only to that extent.*" (Emphasis supplied). Thus, the public policy was declared to be that powers of these courts granted to municipalities in their charters were not to be diluted, but rather enlarged by the adoption of the Code. A similar declaration is found in *Code* § 102-107: "If there is a law in force at the time of the adoption of this Code, having entirely a local application, such local law is not repealed by this Code, unless expressly so declared."

Of course, it is true that a municipal ordinance which penalizes an act made penal by existing State law covering the same subject matter must yield to the State law. Art. I, Sec. IV, Par. I of the Constitution; *Jenkins v. Jones,* 209 Ga. 758 (1) (75 SE2d 815). But the ordinances for violations of which there were convictions here do not make penal matters which are covered by statutes of general application, nor do the charter provisions. And since it is specifically declared by the Act of 1881 that it is intended only to

grant additional powers for prescribing punishment of a specified kind, it cannot be said that the provisions of the charter, or of the ordinances, conflict with that Act, as codified in § 69-205.

One purpose of the Act of 1881, codified as *Code* § 69-205, is probably explained in *Leonard v. Mayor &c. of Eatonton,* 126 Ga. 63 (54 SE 963), dealing with a similar statute adopted in 1879, codified as *Code* § 69-704, to be the broadening of the powers of municipalities by permitting the imposition of an alternative sentence, which had previously been held to be taboo because coercive in nature. *Brieswick v. Mayor &c. of Brunswick,* 51 Ga. 639. Even that Act was *permissive,* and not mandatory; it broadened power rather than diluting it.

If our construction of *Code* § 69-205 were not correct, we should find that we have two Code sections dealing with the powers of municipalities to impose punishment which are themselves conflicting. But we do not so regard them. Section 69-205 applies only when the municipality seeks to impose *labor* in an *organized work-gang* as a means of confinement. That is not the same, or even the equivalent of imprisonment in a city jail. The recorder did not sentence Mr. Key to labor on a work-gang.

█ Was there error in the suspension of the accused's driver's license? We think not. The action of the recorder was specifically provided for by Ga. L. 1937, pp. 322, 348; 1951, pp. 598, 604 (*Code Ann.* § 92A-9908), and the stipulation of the facts, together with the petition for certiorari, the recorder's answer, and other portions of the record clearly demonstrate that the basis for the suspension comes within the ambit of the statute.

The contention that this was the imposition of an additional penalty for the same offense is without merit. The cancellation or suspension of a driver's license is not the imposition of a criminal penalty, or a punishment for crime, but is a civil disqualification. The suspension was not a part of the sentence imposed; it was a separate matter, and thus does not run counter to *Nelson v. State,* 87 Ga. App. 644 (75 SE2d 39). Cf. *Turmon v. Department of Public Safety,* 222 Ga. 843 (3) (152 SE2d 884); *Dennis v. State,* 226 Ga. 341 (175 SE2d 17). What we hold here does not conflict with the holding in *Trowbridge v. Dominy,* 92 Ga. App. 177 (88 SE2d 161).

*Judgment reversed. Hall, P. J., and Whitman, J., concur.*