Argued June 20, reversed July 28, 1975

JAMES ROSS, *Petitioner, v.* OREGON STATE
PENITENTIARY (01-75-141)(4409), *Respondent.*

538 P2d 90

*John K. Hoover,* Deputy Public Defender, Salem,
argued the cause for petitioner. With him on the brief
was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Scott McAlister, Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

This is a review of a prison disciplinary proceeding. Petitioner was found guilty by a disciplinary committee of disobeying an order given by a correctional officer. Petitioner asserts there was insufficient evidence for the disciplinary committee to find him guilty of disobeying an order.

On January 24, 1975, petitioner was being treated at a Salem hospital while in the custody of a correctional officer, who was acting as a guard. Petitioner asked to have his leg chains removed. The officer informed him that he would have to be handcuffed to the bed and petitioner became upset. When a nurse entered with a tray of food petitioner began to swear and use obscene language directed at the food, telling the nurse what to do with it. The officer then told petitioner to "watch his mouth," but petitioner continued his outburst. The medication petitioner received was not a factor contributing to his agitation.

The scope of our review in this case is limited to determining if the finding of the disciplinary committee is lawful in substance and procedure, and is supported by reliable, probative and substantial evidence in the whole record. ORS 421.195; ORS 183.480 (7)(a) and (d).

While petitioner was told to "watch his mouth," we conclude that the import of this directive was not

sufficiently clear and definite as to constitute an order, the disobedience of which would be a violation of Rule 11.[1] Stated another way, it is uncertain whether the quoted words were intended to require petitioner to be silent, for example, or merely intended to require him to stop swearing. Similar cases in which the same result was reached, but which involved disobedience of a defective order of a superior officer in the armed forces, may be found in Digest of Opinions of the Judge Advocates General of the Armed Forces (published annually) under "Disobedience of Orders and Regulations," § 41.23, Form of Order; precatory words.

While petitioner's conduct as described by the officer might well be chargeable under some other provision such as, for example, disorderly conduct under ORS 166.025, it is not punishable as a violation of Rule 11, absent an unambiguous order, nor, so far as we can determine, under any other provision of the then applicable "Major Rules of Prohibited Conduct" adopted December 17, 1974.

■ For the reasons stated above, we hold that the order of the committee was unlawful in substance, was not supported by probative evidence in the whole record and must therefore be reversed.

■ Finally, we should point out for the future guidance of Corrections Division personnel that the instant charge was defective in at least one other respect:

The charge alleges that despite the officer's admonishment to "watch his mouth," petitioner "continued to curse the nurses." It does not set forth

---

[1] Rule 11 of the "Major Rules of Prohibited Conduct" provides:

"Disobedience of an Order

"No inmate shall fail to promptly comply with an order of a staff member."

any of the particular words used as it did in the case of the obscene language which apparently prompted the admonishment.

The use of the term "curse" without quoting any of the language employed amounts to no more than the conclusion of the officer filing the charge. In *Cason v. Baskin,* 155 Fla 198, 20 So2d 243 (1944), the court, in defining the word "curse," observed that the word has a wider meaning than profanity, and may connote anything from a mere execration to real profanity. Also, what would be considered cursing in some circles of society might not be so regarded in another. For example, in *Carr v. City of Conyers,* 84 Ga 287, 10 SE 630, 20 Am St R 357 (1890), the court held that evidence that a person accused of "cursing" used the word "damn" or something to that effect, was insufficient to support a conviction for cursing in violation of a city ordinance.

To meet this objection the charge should have alleged the particular words used, or at least some of them, because as the charge was drawn, it was what petitioner actually said *after* the admonishment rather than before which allegedly constituted the act of disobedience and was the basis of the charge.

Reversed.